COMMONWEALTH vs. JAMES NIGHELLI
(and a companion case[1]).

Plymouth. April 21, 1982. — May 28, 1982.

Present: GREANEY, CUTTER, & DREBEN, JJ.

*Conspiracy. Practice, Criminal,* Instructions to jury, Mistrial. *Evidence,* Other offense.

Evidence at a criminal trial was sufficient to warrant findings that the two defendants had conspired to commit murder. [591-595]

At the trial of two defendants charged with conspiracy to commit murder, the judge did not err in instructing the jury that, where there were only two alleged conspirators, the acquittal of one would require that both be acquitted. [595-596]

At the trial of indictments charging conspiracy to commit murder, the judge did not err in instructing the jury that the possible withdrawal of one of the defendants from the conspiracy did not constitute a defense to the charge. [596-597]

Although the transcript of the judge's charge to the jury in a conspiracy trial indicated that the judge told the jury that "a person becomes a conspirator by negligently and intentionally entering into an agreement that creates a combination," this court found no reversible error where it appeared that the word "negligently" was probably an error of the court stenographer and where the statement, if made, was immaterial in light of the charge as a whole. [597-598]

At the trial of indictments charging conspiracy to murder, the judge did not err in refusing to grant a mistrial or to give immediate cautionary instructions to the jury when a witness, in response to persistent questioning by defense counsel, gave testimony suggesting that the defendants had been involved in a proposed bank robbery. [598-600]

INDICTMENTS found and returned in the Superior Court Department on January 16, 1980.

The cases were tried before *Hurd, J.*

*Bernard Grossberg* for Warren E. Melanson.

---

[1] Commonwealth vs. Warren E. Melanson.

*Martin S. Cosgrove* for James Nighelli.

*Robert S. Sinsheimer,* Assistant District Attorney (*Bruce W. Edmands,* Assistant District Attorney, with him) for the Commonwealth.

CUTTER, J.  The defendants Nighelli and Melanson were found guilty, after a six-day trial before a Superior Court judge and a jury, on indictments charging that each conspired with the other on July 3 and 12, 1979, and on other occasions between July 3 and 24, 1979, to murder Vincent Ferrara.  Each defendant has appealed.  At trial, each defendant rested at the close of the Commonwealth's case, and filed a motion for a required finding of not guilty.  These motions were denied.

1. The evidence most favorable to the Commonwealth was that one or both defendants had been having discussions in June, 1979, with Flemming Budual.  Beginning in early July, 1979, further conferences took place.

(a) By arrangement, Budual met both defendants at a Howard Johnson restaurant in Kingston on July 3.  After discussion of a separate enterprise, Nighelli asked Budual if he "knew somebody that could make two persons disappear."  When asked what he meant, Nighelli said "something about two people have to be killed," two elderly males from New Hampshire, because "some big shot in the M.B.T.A. wanted . . . it because" his son had been killed, "someone had killed his son."  Budual said he would "see if . . . [he could] find somebody."  Budual was told by Nighelli that a proposed victim was "living in New Hampshire . . . that . . . [Nighelli] knew what kind of car he was driving every day, [and] which way he was going back to his home," and that the victim was not "related to organized crime."  When asked the cost, Budual said he "didn't know, but . . . [estimated] three to five thousand dollars."  Melanson (known to Budual only as "Mel") assured Budual that "everything Nighelli told . . . [him] was true."

(b) On July 12, 1979, Budual went to Friendly's Restaurant in Plymouth to meet Nighelli but found Melanson there.  Melanson told Budual that Nighelli was in Lowell

and asked Budual "if . . . [he] ever got a . . . hit man to kill the persons from New Hampshire." Budual told Melanson that he would call and arrange for Melanson and Nighelli to meet the hit man at the Howard Johnson Restaurant in South Boston the next day. The appointment apparently was not kept by Melanson and Nighelli.

(c) On July 20, 1979, Budual met Nighelli at Friendly's Restaurant at Plymouth. Nighelli told Budual "that Mel screwed up and . . . was out of it now," but that "the hit was still on, was still going on."

(d) On July 24, Budual, "in the midday hours" met with Nighelli and one Don Cuccinelli (known to Nighelli only as "Pauly") at the Howard Johnson Restaurant in Kingston. Cuccinelli asked Nighelli for "information about the person that has to be hit." Nighelli gave Cuccinelli a paper which contained the intended victim's motor vehicle license plate number, make of automobile, and road address. Cuccinelli, as the supposed "hit man," then "asked for some money up front for expenses." Nighelli said he would go to Boston, "speak with the person [who] wanted the job done and get the money for him." Nighelli said that the job could not be done as "an accident," but must be carried out in some manner that would make the victim "an example" so that other people involved would know "that the guy died for a good reason." They met again at the same place later that day about 5:30 P.M. Nighelli had not obtained any money, but said, "[Y]ou go ahead and do the hit, anyway, because he [Nighelli's friend] will be good for the money." Nighelli disclosed the name of the proposed victim as Vincent Ferrara.

(e) On July 27, Nighelli called Budual by telephone to report that Ferrara "was in prison." He asked if it could be arranged to "get him hit inside the prison."

Nighelli and Melanson were unfortunate in their confidants. Budual was an undercover informer for the Drug Enforcement Administration of the Department of Justice, who "knew an awful lot about illegal trafficking in drugs" and had become an informer because he did not like people

who used and sold drugs. Cuccinelli was a State police of-ficer, working under cover in the narcotics unit and posing as a "hit man" in respect of the proposal to kill Ferrara. Budual and Officer Cuccinelli each testified. Their testi-mony, already described, was sufficient to warrant a ra-tional jury in finding beyond a reasonable doubt that the defendants, as early as July 3, were guilty of the offense of conspiracy to murder one and possibly two unnamed New Hampshire residents. Ferrara's name was not mentioned to Budual until after Nighelli had told Budual on July 20 that Melanson "screwed up and was out of it now." Evidence that Ferrara was a resident of New Hampshire was pro-duced in the form of Ferrara's motor vehicle registration and a Massachusetts house of correction record (each show-ing him to be a resident of Nashua, New Hampshire). Melanson had shown continuing participation in the ven-ture by his inquiry of Budual on July 12 about the "hit man." Nighelli's pursuit of the objective was indicated by his later talks with Budual on July 20 and 24, at which he met Officer Cuccinelli.[2]

The crime, at least in this simple two-participant type of conspiracy, under Massachusetts law is complete upon the

---

[2] The conversations with Budual, by Melanson on July 12 and by Nighelli on July 20 and 24, were not the subject of specific objection (by defense counsel) as to their admissibility. Earlier telephone conversations on June 3, June 25, and July 1 between Budual and Nighelli had been ad-mitted in evidence only against Nighelli. After testimony about the con-versations of July 3 and July 12, at which Melanson was present, and before Budual's testimony about the July 20 conference, the prosecutor asked the trial judge at a bench conference to rule that there had been suf-ficient proof that a conspiracy existed, so that conversations with either could be attributed to both defendants. The judge declined so to charge the jury at that stage of the trial but suggested to the prosecutor "that the next time" that the problem arose "and there is an objection," he could overrule it. Inasmuch as no objections were made to the admissibility of Budual's testimony about the later conferences between Budual and Nighelli, we regard that testimony as admissible against both defendants for all purposes, including the identification of Ferrara as the initial pro-posed victim. Compare *Commonwealth* v. *White*, 370 Mass. 703, 708 (1976), where objections were made. We do not understand the defend-ants to argue otherwise on appeal.

formation of an agreement and a combination to commit, or caused to be committed, a crime or an unlawful act. *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 249-250 (1971), cert. denied, 407 U.S. 914 and sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910 (1972). *Commonwealth* v. *Corridori*, 11 Mass. App. Ct. 469, 476 (1981).[3] See *Commonwealth* v. *Benjamin*, 3 Mass. App. Ct. 604, 618 & n.27 (1975); Nolan, Criminal Law § 443 (1976 & supp. 1981). See for other situations which may constitute criminal conspiracy, *Commonwealth* v. *Gill*, 5 Mass. App. Ct. 337, 340 (1977), and cases cited. There is in Massachusetts no requirement that an overt act be committed. See *Commonwealth* v. *Harris*, 232 Mass. 588, 591 (1919); Nolan, *supra*, § 446.

Originally there were (a) indictments charging the defendants with conspiracy to solicit the commission of murder, as well as (b) indictments charging each of them with conspiracy to murder. The Commonwealth consented to the dismissal of the indictments charging conspiracy to solicit murder and proceeded only on the indictments charging conspiracy to murder Ferrara or (as of the conference of July 3) one or two unspecified residents of New Hampshire. The jury could infer from the conversation of July 3, at which both defendants were present, that each defendant then had in mind the same victim or victims, although no victim was then identified to Budual. The testimony about what each said and did when together on July 3, if believed, constituted proof of participation in a combination "directed toward the accomplishment of the same object," viz. the death of two New Hampshire residents not

---

[3] For general text authorities concerning criminal conspiracy, see 1 Anderson, Wharton's Criminal Law and Procedure §§ 82-93 (1957 ed. & 1979 supp.); 4 Torcia, Wharton's Criminal Law §§ 722 et seq. (1981); Perkins, Criminal Law, 612-635 (2d ed. 1969); Williams, Criminal Law The General Part, §§ 2, 127, 212, 221 (2d ed. 1961). The Model Penal Code § 5.03 (Proposed Official Draft, 1962, and see comments to this section, Tent. Draft No. 10, 1960, at 102 et seq.) departs from the present Massachusetts law and common law rules in various respects, as is explained fully in the comments. See the discussion in LaFave & Scott, Criminal Law § 62, at 470 et seq. (1972).

then named to Budual.  See *Commonwealth* v. *Smith,* 163 Mass. 411, 417-418 (1895); *Commonwealth* v. *Soule,* 6 Mass. App. Ct. 973, 974 (1979).  Compare *Commonwealth* v. *Shapiro,* 10 Mass. App. Ct. 678, 682-684 (1980).  Compare also *Commonwealth* v. *Nelson,* 370 Mass. 192, 200-203 (1976), where the evidence of the conspiracy's object was much more equivocal.  Even if these defendants did not intend to participate directly and personally in killing the victim or victims they could be found to have conspired to bring about the result.  See *Commonwealth* v. *French,* 357 Mass. 356, 391-393 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts,* 408 U.S. 936 (1972).  Compare *Commonwealth* v. *Perry,* 357 Mass. 149, 152 (1970).  The motions for required findings of not guilty were denied properly.

2.  There is no merit to the defendants' argument that the judge in some manner usurped the function of the jury in his charge.  The judge instructed correctly that, in this case where there were only two alleged conspirators, the acquittal of one of them would require that both be acquitted because one cannot conspire alone.  See *United States* v. *Fox,* 130 F.2d 56, 57 (3d Cir.), cert. denied, 317 U.S. 666 (1942); *United States* v. *Williams,* 503 F.2d 50, 54 (6th Cir. 1974); LaFave & Scott, § 62, at 488 et seq.; *Nolan, supra,* § 452.  Compare Model Penal Code, Comment to § 5.03, at 104 (Tentative Draft No. 10, 1960).  The judge further charged that, if the jurors "found that the Commonwealth has proved beyond a reasonable doubt all . . . [the] elements [of the crime of conspiracy,] then you *may* bring and return a verdict of guilty as to both defendants" (emphasis supplied).  We do not perceive how this charge in any respect constitutes an instruction directing a verdict of guilty against either defendant or improperly precluding the jury from returning "inconsistent verdicts," as that term is used in some Federal cases.  See *United States* v. *Martorano,* 557 F.2d 1, 8-9 (1st Cir. 1977), *S.C.* 561 F.2d 406, cert. denied, 435 U.S. 922 (1978).  Under the charge, neither defendant could be harmed by the acquittal of one of them, and there

was no *requirement* in the charge that, if one was found guilty, the other must also be found guilty.[4]

3. There was no error in the action of the trial judge in charging that Melanson's possible withdrawal from the conspiracy (as reported by Nighelli to Budual at their conference of July 20, 1979; see part 1[c] of this opinion, *supra*) was "not a defense . . . as the crime of conspiracy is complete upon the making of the agreement" and the "combination." The defendants rely on language in *United States* v. *United States Gypsum Co.*, 438 U.S. 422, 462-465 (1978), concerning indictments for a continuing conspiracy of price-fixing under the Sherman Act, where proof of withdrawal from the conspiracy may be of significance. Whatever weight may be given to withdrawal from a continuing conspiracy in Federal and anti-trust proceedings, withdrawal from a conspiracy has not been shown to have any effect upon the commission of the common law offense of conspiracy to commit a crime under Massachusetts law. See Nolan, Criminal Law § 452, at 289.[5] This is a logical ex-

---

[4] We have been referred to no Massachusetts decisions which suggest that the Federal cases on "inconsistent verdicts" have any application to conspiracy charges (or, indeed, other charges) in the State courts. The only Massachusetts decisions relied upon by the defendants are *Commonwealth* v. *Donovan*, 170 Mass. 228, 242 (1898), and *Commonwealth* v. *Walsh*, 255 Mass. 317, 319-320 (1926), neither of which involved conspiracy indictments. A different situation may arise where, in prosecutions for substantive offenses, different evidence applies to (or may be believed or rejected with respect to) different defendants, and a trial judge charges that like verdicts must be returned as to each defendant. Compare *Commonwealth* v. *Cote*, 5 Mass. App. Ct. 365, 369-370 (1977). Compare also *Standefer* v. *United States*, 447 U.S. 10, 14-26 (1980).

[5] In LaFave & Scott, *supra*, § 62, at 486-488, some respects are pointed out in which withdrawal from the conspiracy may be significant, e.g. (a) relief from liability for substantive crimes committed, pursuant to the conspiracy, after the date of withdrawal by a conspirator; (b) running of the statute of limitations (see *United States* v. *Panebianco*, 543 F.2d 447, 453-454 [2d Cir. 1976], cert. denied, 429 U.S. 1103 [1977]), after the withdrawal; (c) period when statements of one coconspirator may bind other conspirators, and similar matters. On the record before us, we need not consider to what extent in Massachusetts, these exceptions to the general rule may be of importance.

tension of cases, already cited in part 1 of this opinion, applying the "traditional rule" (referred to in the comments to Model Penal Code, § 5.03[6], at 143 [Tent. Draft No. 10 [1960]) that "the crime is complete with the agreement" so that "no subsequent action can exonerate the conspirator of that crime."[6]

4. The transcript of the trial judge's charge indicates that he told the jury that "a person becomes a conspirator by *negligently* and intentionally entering into an agreement that creates a combination" (emphasis supplied). The judge was purporting to read from (or follow) written requests by the Commonwealth for instructions, which had asked that the jury be told that "a person becomes a conspirator by *knowingly* and intentionally entering into the agree-

---

[6] On this meager record, even if the Model Penal Code had been applicable, it would seem that Melanson's action as described by Nighelli on July 20 would not have provided him a defense, for it was not shown that Melanson "thwarted" the conspiracy by whatever he did. The 1962 Proposed Official Draft of the Model Penal Code, § 5.03(6) reads "(6) *Renunciation of Criminal Purpose*. It is an affirmative defense that the actor, after conspiring to commit a crime, *thwarted the success of the conspiracy*, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose" (emphasis in text supplied). See comments on subsection (6), Model Penal Code (Tent. Draft No. 10) at 142-144. See also comments upon renunciation of other inchoate crimes, at 71-73. Subsection (7) of § 5.03 (Proposed Official Draft, at 85-86) reads in part "For purposes of Section 1.06(4) . . . (c) if an individual abandons the agreement, the conspiracy is terminated as to him only if and when he advises those with whom he conspired of his abandonment or he informs the law enforcement authorities of the existence of the conspiracy and of his participation therein." This language does not purport to deal with renunciation as a *defense* to a charge of conspiracy but only with "abandonment" of the conspiracy, as it affects the date when the crime occurs and when time starts to run. See for § 1.06(4), Proposed Official Draft at 9-10, and comments on subsection (7) in Tentative Draft No. 10, at 144-155. A proposed revision (somewhat based on the Model Penal Code) of our statutes on criminal conspiracy was set out in the Proposed Criminal Code of Massachusetts, c. 263, §§ 48 & 49(3), prepared in 1971 for the Governor's Committee on Law Enforcement and the Administration of Criminal Justice and the Criminal Law Revision Commission, 1972 Senate Doc. No. 200, reprinted by Lawyers Cooperative Publishing Co. and The Michie Co. in 1972. These provisions have not been enacted.

ment that creates the combination" (emphasis supplied). On motion by the Commonwealth, the trial judge ordered the transcript corrected and a single justice of this court ordered the papers with respect to the correction reproduced and referred to the panel which has decided this appeal. We regard the trial judge's correction as essentially conclusive. Mass.R.A.P. 8(e), as appearing in 378 Mass. 934 (1979). Apart from the rule, we regard the use of the word "negligently" as probably an error (based on phonetic similarity of the words "negligently" and "knowingly") of the court stenographer during a hot July week of trial in which there had been mention of outside traffic noise and the sound of electric fans. Also, in related sections of the charge, which must be viewed as a whole and in context, the judge (as shown by the uncorrected transcript) had charged that "the agreement that each member [of a conspiracy] makes must have a common purpose, that is to say the members of that conspiracy must knowingly and intentionally have agreed to accomplish the same thing."

At the close of the judge's charge, no defense objection to the alleged use of the word "negligently" was made (at a time when any error could easily have been corrected). This circumstance not only supports the probability that no error was in fact made, but provides strong reason for treating the statement, if made, as an immaterial "slip of the tongue," see *Commonwealth* v. *Wood*, 7 Mass. App. Ct. 455, 458 (1979), on a point adequately and accurately dealt with elsewhere in the instructions.

5. The defendants' discussions with Budual on various dates in July, 1979, dealt not only with the proposed murder of Ferrara, as to which Budual gave testimony, but also dealt with other criminal activities, then discussed, including a bank robbery. Melanson's counsel had filed a "motion in limine" to prevent reference to the other criminal activities and especially the bank robbery. After an extended bench conference, the prosecuting attorney stated that he would "make every effort to exclude questions . . . concerning the bank robbery." The prosecutor also

agreed to caution witnesses called by him to avoid mention of offenses other than those then being prosecuted. The trial judge ruled that "as of . . . [the bench conference], any questions relating to the . . . bank robbery allegedly abandoned . . . [were] to be excluded," subject to reconsideration as the trial proceeded. This effort to avoid possible prejudice to the defendants was successful, while Budual was being examined by the prosecutor, despite the fact that the subject of the proposed murder of Ferrara was discussed at some of the conferences of one or the other of the defendants with Budual, when there was also discussion of the proposed bank robbery.

During the cross-examination of Budual, Budual was asked by Melanson's counsel about the detail of the somewhat ambiguous conversation of July 20, when Nighelli reported to Budual that Melanson was "out of the hit" theretofore discussed. When seeking further detail, Melanson's counsel asked, "Didn't Nighelli make it clear to you that as a result of screwing it up Mel[anson] was out of it now?" To this Budual replied, "He was out of the hit job and the bank job." Melanson's counsel asked for a mistrial and immediate instructions to disregard the answer. The judge denied the motion for a mistrial and gave no immediate instructions based on the objection. After the judge's charge, defense counsel made no request for further instruction on this matter, perhaps some indication that he then thought it would unduly emphasize the answer.

There was no error. There is no fair suggestion that the answer was inaccurate in any respect, or was induced by the prosecutor. Compare *Commonwealth* v. *Banuchi*, 335 Mass. 649, 654 (1957). The conversation, referred to by Budual, probably discussed somewhat inextricably both the proposed "hit" on Ferrara and the proposed bank robbery. Budual's answer was given in reply to incautious and persistent defense efforts to press Budual as to details in an area in which defense counsel knew there were risks. The trial judge reasonably could have been of opinion that immediate cautionary instructions would have served only

unduly to lay stress on the somewhat obscure reference in Budual's answer to "the bank job." The full answer, in any event, had sufficient relevance to the specific conspiracy being prosecuted to be admissible in the circumstances. See *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. 1, 2-3 (1972). See also *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 815-816 (1973); *Commonwealth* v. *Walden*, 380 Mass. 724, 732 (1980). *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269 (1982); *Commonwealth* v. *Drayton*, 386 Mass. 39, 48-49 (1982). Compare *Commonwealth* v. *Hanley*, 337 Mass. 384, 395, cert. denied, 358 U.S. 850 (1958). Compare also *Commonwealth* v. *Welcome*, 348 Mass. 68, 70-71 (1964); *Commonwealth* v. *Spare*, 353 Mass. 263, 267 (1967).

*Judgments affirmed.*