COMMONWEALTH *vs.* FRANK G. ELDRIDGE. No. 89-P-418. February 14, 1990. *Unnatural Sexual Intercourse. Practice, Criminal,* Required finding. *Evidence,* Fresh complaint.

The defendant challenges the sufficiency of the evidence upon which a Superior Court jury found him guilty of the statutory crime of compelling the victim to submit to unnatural sexual intercourse by force and against his will or by threat of bodily injury. G. L. c. 265, § 22(*b*). He argues that his motion for a required finding of not guilty should have been granted by the trial judge, who allowed the case to go to the jury on instructions as to both the "force" and "threat" grounds of G. L. c. 265, § 22(*b*).[1]

Viewed in the light most favorable to the Commonwealth, the evidence was as follows:

The victim was a brain-damaged, twenty-two year old with mental ability somewhere between that of a normal four year old and a normal nine year old. While he and the defendant, also a retarded young man, were roommates at a temporary residence for mentally retarded and disabled persons, the defendant involved the victim in unnatural sexual intercourse.

(1) *"Force" evidence.* Sometime in the evening of Friday, September 25, 1987, the defendant showed the victim a pornographic magazine that portrayed male homosexual acts. Thereafter, the victim went to bed in his room and was awakened by the defendant, who took the victim's pajama pants off and at various times directed him to kneel and lie on the floor. While the victim was in those positions, the defendant inserted his penis into the victim's mouth and anus. When asked "[D]id you want to do those things?" the victim testified "No." The next question to him was, "Why didn't you want to do those things?" and his response was "I didn't know what that means." A pair of the victim's pajamas, which were intact when packed by his mother prior to that weekend, were observed by her sometime later to have all of the buttons missing from the top portion.

Sometime during that weekend, the victim told a visiting friend that the defendant had raped him. On the Sunday of that weekend, he made the same complaint to his mother and to a nurse and was observed to be very upset, distraught, and crying. The nurse, who examined the victim on that Sunday, testified that she found no signs of rectal injury, and a physician

[1]General Laws c. 265, § 22(*b*), as amended through St. 1980, c. 459, § 6, states in pertinent part: "Whoever has . . . unnatural sexual intercourse with a person and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury, shall be punished. . . ."

testified that the absence of such injury was not inconsistent with the incident related by the victim. On October 6, 1987, the victim gave an oral statement to a State trooper which was generally consistent with, but more extensive and graphic than, his trial testimony.

(2) *"Threat" evidence.* At some point during the night of September 25-26, 1987, the victim observed a knife resembling a fingernail file on the defendant's bed, which was about twelve feet away from his bed. He testified that the defendant during that night "said he was going to kill me with a knife." In one instance the victim testified that this threat was made after the sexual contacts and, in another, that he did not know when it was made. He further testified that the defendant never pointed a knife at him and that he never went to the defendant's bed that night.

(3) *Sufficiency of the evidence.* The jury should not have been permitted to deliberate as to that part of the indictment charging the crime of unnatural intercourse compelled by threat of bodily injury. Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). The evidence most favorable to the Commonwealth left unclear when the defendant threatened to kill the victim with a knife. Any inference leading to the conclusion that such threat occurred prior to or concurrently with sexual conduct would have taken the jury well into the forbidden realm of the speculative. *Commonwealth v. Gallagher*, 4 Mass. App. Ct. 661, 662 (1976). *Commonwealth v. Savoy*, 21 Mass. App. Ct. 519 (1986). By contrast, the evidence of force was sufficient, if only marginally so, to satisfy a rational trier of fact of the defendant's guilt on that ground. *Commonwealth v. Latimore*, 378 Mass. 671, 676-678 (1979). The victim's testimony, when considered in the totality of substantive circumstances presented to the jury, reasonably supports the inferences of force and nonconsent. *Commonwealth v. Sherry*, 386 Mass. 682, 688 (1982). Even had the evidence been insufficient to withstand, on the basis of traditional analysis of objective factors, a motion for a required finding of not guilty on "force" grounds, the uncontroverted evidence of the victim's mental deficiency would have required that the case go to the jury. A rational trier of fact could reasonably infer that the victim did not possess the mental capacity to consent to the sex acts here involved. Proof of lack of capacity may permit a jury, with proper instruction, validly to conclude that the force necessary to effect the intercourse is sufficient to constitute the force element of the crime of rape. See *Commonwealth v. Burke*, 105 Mass. 376 (1870); *Commonwealth v. Roosnell*, 143 Mass. 32, 40 (1886); *Commonwealth v. Helfant*, 398 Mass. 214, 220-222 (1986); *Commonwealth v. Lewandowski*, 22 Mass. App. Ct. 148 (1986); *Commonwealth v. Maloney*, 23 Mass. App. Ct. 1016 (1987).

Since a general verdict was returned by the jury after the case had been submitted to them on both the "force" and "threat" grounds, it is impossible to determine, on the record before us, whether the jury convicted on one or the other of the grounds or whether they found that both grounds had been proved. *Commonwealth v. Mandile*, 403 Mass. 93, 98-99 (1988).

Where, as here, "the verdict is supported on one ground but not on the other and it is impossible to tell which ground the jury selected," the verdict must be set aside. *Yates* v. *United States*, 354 U.S. 298, 312 (1957). *Commonwealth* v. *Matchett*, 386 Mass. 492, 511 (1982).

(4) *Fresh complaint testimony.* An issue that may arise on retrial involves the verbatim reading in evidence by the State trooper of a report of the victim's oral statement. While there is support for the proposition that once a statement is allowed in evidence as a fresh complaint, "the whole of the statement . . . is admissible," *Glover* v. *Callahan*, 299 Mass. 55, 58 (1937), a better approach in the circumstances might be to excise, on appropriate motion, such portions as go beyond simply corroborating the victim's testimony. *Commonwealth* v. *Kirouac*, 405 Mass. 557, 565 (1989). This would avoid the risk of permitting the introduction of otherwise absent essential elements and relying upon the jury to follow an intrinsically difficult to understand limiting instruction. *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 627 (1987). Notwithstanding the statement's status as a fresh complaint, its reading should not be permitted until minimal foundational safeguards are met. *Commonwealth* v. *McDuffie*, 16 Mass. App. Ct. 1016, 1017 (1983). At the very least, the trial judge must be satisfied that the statement was seasonably recorded by the witness. See *Commonwealth* v. *Bookman*, 386 Mass. 657, 663 (1982).

*Judgment reversed.*

*Verdict set aside.*

*Carlo Obligato*, Committee for Public Counsel Services, for the defendant.

*Lynn Morrill Turcotte*, Assistant District Attorney, for the Commonwealth.