COMMONWEALTH *vs.* ROBERT E. COLEMAN
(and a companion case[1]).

No. 89-P-1379.

Suffolk. October 5, 1990. - March 13, 1991.

Present: KASS, KAPLAN, & JACOBS, JJ.

*Practice, Criminal,* Required finding, Verdict, Assistance of counsel, Argument by prosecutor. *Rape. Conspiracy. Evidence,* Fresh complaint.

At the joint trial of two defendants on multiple-count indictments charging aggravated rape, there was sufficient evidence to warrant findings by the jury that one of the defendants was the perpetrator of at least two aggravated rapes as part of a joint enterprise and that the second defendant had committed four aggravated rapes with the aggravating factors being either joint enterprise or serious bodily injury or both; consequently, the denial of the defendants' motions for required findings of not guilty as to the charges of aggravated rape was not error. [232-234]

A defendant who had been tried and found guilty on four counts of aggravated rape (by reason either of joint enterprise or serious bodily injury or both) while a codefendant was found guilty of only two similar counts was not entitled to have the jury's verdict set aside either as inconsistent or as legally impossible. [234-236]

At the trial of indictments charging aggravated rape, there was no error in admitting in evidence certain portions of the fresh complaint testimony of a police officer and a nurse that included a recitation of the details allegedly recounted by the victim, where any discrepancies between the fresh complaint testimony and testimony given by the victim consisted largely of peripheral details and did not prejudice the defendants. [236]

There was no merit to contentions by criminal defendants that a portion of a trial attorney's closing argument constituted ineffective assistance [236-237], that the prosecutor's opening reference to a jigsaw puzzle was improper [237], and that the judge's allowing references to "rape" and "victim" by the prosecutor and the witnesses constituted reversible error [237].

---

[1] Commonwealth *vs.* Nathan Lang.

INDICTMENTS found and returned in the Superior Court Department on September 17, 1987, and January 8, 1988, respectively.

The cases were tried before *Andrew Gill Meyer*, J.

*Carlo Obligato*, Committee for Public Counsel Services, for Robert E. Coleman.

*Joan Lieberman* for Nathan Lang.

*Brian J. Carney*, Assistant District Attorney, for the Commonwealth.

JACOBS, J. After a joint trial in the Superior Court, a jury convicted the defendant Lang on four counts of a four-count indictment and the defendant Coleman on two counts of a four-count indictment, each count charging aggravated rape[2] of the victim on February 27, 1987.[3] We address the various grounds on which the defendants appeal, first setting forth the evidence, viewed in the light most favorable to the Commonwealth.

The victim and an acquaintance, called Lucky, visited with the defendants in Lang's apartment on the evening of February 26, 1987. The apartment comprised two rooms, a living room and a bedroom, between which was a door that was open throughout the period here described. Both Lang and Coleman (Lang's uncle) were previously known to the victim. After a short while during which Lucky and Lang conversed and smoked crack cocaine, Lucky left. Thereafter, the victim and the defendants smoked cocaine for about five hours. Lang and the victim then left the apartment by taxi to obtain more cocaine. Upon their return, Lang and the victim smoked cocaine in the bedroom until about three or four A.M., when they again left the apartment by taxi to acquire more cocaine. When they returned, Coleman was awake on a

---

[2]All counts of the indictments were essentially identical. They charged the defendants in the precise language of G. L. c. 277, § 79. That language, by operation of G. L. c. 277, § 39, conveys a definition of the crime of aggravated rape which tracks the wording of G. L. c. 265, § 22(*a*).

[3]Lang and Coleman were sentenced to imprisonment at Massachusetts Correctional Institution, Cedar Junction, for terms of six to ten years and three to six years, respectively.

couch in the living room. Lang and the victim again retired to the bedroom and smoked cocaine.

When the victim made ready to leave the apartment, Lang indicated that he did not want her to leave and that he wanted her to "make love to him." She refused and told him she was ready to go. She asked Lang to walk her to the corner. He refused and again stated that he wanted to "make love to her." She said, "no, no, no," and, in order to deter him, told him she was pregnant and would have sex with him after she had had an abortion. When she persisted in her refusal, and while they were in the bedroom, Lang struck the victim in her eye with a closed fist. She then covered her face to prevent being hit again. At that time she was also asking Lang to stop in a voice loud enough to be heard in the living room. At some point after hitting her in the eye, Lang pulled the victim onto the bed. She took her clothes off so that she "wouldn't keep getting hit on." Lang then took off his clothes and forced the victim to engage in vaginal and oral sex with him. Thereafter, while Lang was still in the bedroom, Coleman entered the bedroom, naked. As Coleman approached the bed, the victim told Lang that she "didn't want to do nothing with his uncle." Lang told her "to treat his uncle good." Coleman then had vaginal and oral sex with the victim.

The victim later put her clothes on, except for her shoes, and entered the living room where she engaged in conversation with the defendants until it was light outside. She later left the apartment to use a hallway bathroom. At some point thereafter, Coleman left the apartment for approximately an hour and one-half to two hours. While he was out, he telephoned the apartment and asked the victim if she wanted anything. When he returned with a soda for the victim, he asked her why she was not still in the bed. She said that she "didn't want to do nothing else." At that point, Lang was in the living room and Coleman was on his way to the bedroom. While Coleman was in the bedroom and the victim was in the living room, she heard Coleman calling out her name in a normal voice. Thereafter, Lang slapped her about three times

and pulled her from the living room to the bed in the bedroom. Coleman was then in the bed, naked. The victim took off her clothes because she was "scared." Coleman told her "if you're not interested its ok." Coleman then had vaginal and oral sex with her, following which Lang had vaginal and oral sex with her.

The victim testified that at no time did she consent to have sex with either defendant. Aside from being punched in the eye, the victim was hit by Lang "a couple of more times" while in the apartment.

Lang allowed the victim to leave the apartment at about 9:00 A.M. on February 27, 1987. She went to the house of her sister, who called the police. A police officer observed that she had a swollen right eye. The police arranged for the victim to be taken to a hospital by ambulance. Shortly after 11:00 A.M. on February 27, 1987, a nurse saw the victim at the hospital and observed that she was tearful, that her face was swollen, that one eye was particularly swollen, and that she had facial bruises. During the early afternoon of February 27, 1987, a police officer observed that the victim was upset and that her right eye was completely closed and swollen. A photograph depicting the victim's appearance at the time she was observed by the nurse and the police officer was entered in evidence.

After the Commonwealth closed its evidence, which included testimony of fresh complaint, both defendants moved for required findings of not guilty on all charges. Both motions were denied. Neither defendant presented evidence.

1. *Denial of motions for required findings of not guilty.* Review of the denial of a motion for a required finding of not guilty requires consideration and determination whether the evidence, "in its light most favorable to the Commonwealth . . . is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged," notwithstanding the presence of contrary evidence. *Commonwealth* v. *Sandler,* 368 Mass. 729, 740 (1975). "Additionally, the evidence and the inferences permitted to be drawn therefrom must be 'of sufficient force to bring

minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.' " *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Commonwealth* v. *Cooper*, 264 Mass. 368, 373 (1928). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson* v. *Virginia*, 443 U.S. 307, 318-319, reh'g denied, 444 U.S. 890 (1979).

Under this standard, the denial of Coleman's motion for required findings of not guilty clearly withstands challenge. A jury could conclude beyond a reasonable doubt that Coleman's first sexual encounter[4] with the victim was the product of a joint enterprise with Lang. The evidence readily permitted an inference that Coleman overheard the victim resisting Lang's sexual advances and either observed or heard Lang forcing the victim into sex by force and against her will. The evidence also permitted the further inference that he knew that the victim first succumbed to him unwillingly and as a result of the force and implied threats delivered by Lang. See *Commonwealth* v. *Therrien*, 383 Mass. 529, 538-539 (1981). A jury could find that the victim's resistance to Lang, coupled with her statement that she did not want to do anything with Coleman, was sufficient to demonstrate to Coleman a lack of consent, *Commonwealth* v. *Sherry*, 386 Mass. 682, 688 (1982), which continued through her first sexual encounter with him. Moreover, given what could be found to have been Coleman's knowledge of Lang's first rape of the victim, Coleman's nude approach to the victim shortly after Lang's rape of her, and Lang's telling her "to treat his uncle good," Coleman's sexual intercourse with the victim could be construed as "accomplice liability." *Commonwealth* v. *Cook*, 10 Mass. App. Ct. 668, 674 (1980). Such liability may arise without "prior planning" or an "anticipatory compact" so

---

[4]By first sexual encounter, we mean the oral and vaginal intercourse by each of the defendants with the victim which followed Lang's punching her in the eye; the oral and vaginal intercourse which followed Coleman's return to the apartment was the second sexual encounter.

long as at the critical time the parties "consciously acted together in carrying out the criminal endeavor." *Commonwealth* v. *Fidler*, 23 Mass. App. Ct. 506, 513 (1987). The circumstances permit an inference of "an identity of purpose and a common endeavor," *Commonwealth* v. *Mercado*, 24 Mass. App. Ct. 391, 396 (1987), either from the consecutive rapes or from Coleman's raping the victim under the cloak of Lang's force and implied threat. A rational trier of fact could have found beyond a reasonable doubt that Coleman was the perpetrator of at least two rapes as part of a joint venture and that the essential elements of G. L. c. 265, § 22(*a*), had been established.

We also conclude that the denial of Lang's motion for required findings of not guilty was not error.[5] Ample evidence of Lang's guilt was introduced. A rational jury could have found beyond a reasonable doubt that Lang committed four aggravated rapes with the aggravating factors being either joint enterprise or serious bodily injury or both.

2. *Inconsistency of verdicts.* Lang argues that, whereas the jury found him guilty of four counts of aggravated rape while finding Coleman guilty of only two similar counts, he was, in effect, convicted of having participated in two joint enterprises in which no one else participated. He claims that two verdicts against him, therefore, are legally impossible. He relies essentially on the seeming logic of the conclusion that one cannot be a joint venturer by oneself. Lang further claims that, since neither the indictment nor the verdict slips permit differentiation of the verdicts, it is impossible to determine which of his convictions are paired with Coleman's convictions and that, therefore, all four of his convictions fail.

---

[5]The defendant Lang also argues that the judge used an incorrect standard in deciding the motion for required findings of not guilty. He points to the judge's reference to "a scintilla of evidence" in the course of a comment concerning evidence relating to the defendant Coleman. The issue on appeal, however, is not whether the judge applied the proper standard but, as noted above, whether on the state of the evidence the motion for required findings of not guilty should have been granted. *Commonwealth* v. *Sandler*, 368 Mass. at 740. In any event, the random statement of the judge, when read in the context of the other of his statements, does not indicate a misunderstanding of the proper standard.

We construe this argument as grounded, by analogy, on the principle that "one cannot commit a conspiracy alone." *Commonwealth* v. *Cerveny*, 387 Mass. 280, 285 (1982), citing *Commonwealth* v. *Benesch*, 290 Mass. 125, 135-137 (1935). See *Commonwealth* v. *Nighelli*, 13 Mass. App. Ct. 590, 595 (1982). In any event, Lang's argument overlooks two significant factors.

First, the judge, without objection, instructed the jury that serious bodily injury was an element of aggravated rape and, at the request of Lang's counsel, reinstructed on the subject. The jury could have found that Lang's rapes of the victim were accompanied by serious bodily injury (swollen eye, swollen face, and facial bruises) thereby bringing to the case an aggravating element under G. L. c. 265, § 22(*a*), separate from joint venture. Second, Massachusetts appellate decisions have distinguished between jury verdicts that are impossible at law and those that are merely inconsistent. See *Commonwealth* v. *Sherry*, 386 Mass. at 698; *Commonwealth* v. *McCombe*, 5 Mass. App. Ct. 842, 843 (1977). We do not have here a defendant convicted of a crime based on joint enterprise and all other defendants acquitted of similar charges in the same trial.[6] See *Commonwealth* v. *Benesch*, 290 Mass. at 135-137. Instead, we have one defendant convicted of fewer counts than the other. Even if we assume that all the convictions relied on joint enterprise as the aggravating element, we have, at most, an internal inconsistency. Accordingly, the case is governed by the general rule that mere inconsistency of verdicts does not render a guilty verdict erroneous. *Commonwealth* v. *Sherry*, *supra* at 698. As we have indicated, sufficient evidence was presented to produce the verdicts returned by the jury. We are not confronted, therefore, with a situation in which the questioned verdicts must be set aside because they are "supportable on one ground, but not on another, and it is impossible to tell which ground

---

[6]The conclusion that this verdict configuration in the same trial requires reversal of all guilty verdicts is not a necessary one. See *United States* v. *Bucuvalas*, 909 F.2d 593 (1st Cir. 1990); *Commonwealth* v. *Nighelli*, 13 Mass. App. Ct. at 595-596.

the jury selected." *Yates* v. *United States*, 354 U.S. 298, 312 (1957). *Commonwealth* v. *Matchett*, 386 Mass. 492, 511 (1982). *Commonwealth* v. *Eldridge*, 28 Mass. App. Ct. 936, 937-938 (1990).

3. *Fresh complaint evidence.* The defendants argue that portions of the fresh complaint testimony of a police officer and a nurse who spoke with the victim at the hospital on February 27, 1987, were erroneously admitted and unduly prejudicial to them. In accordance with the Massachusetts rule, that testimony was permitted to go beyond the fact of a complaint and to include a recitation of the details allegedly recounted by the victim. See *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 629 n.8 (1987). Those details were largely corroborative of the trial testimony.

Those portions of the fresh complaint testimony that went beyond the victim's testimony or were at variance with it did not fill gaps in the prosecution's case or introduce otherwise absent essential elements. *Commonwealth* v. *Bailey*, 370 Mass. 388, 396 (1976). *Commonwealth* v. *Eldridge*, 28 Mass. App. Ct. at 938. It is noteworthy that the defense exploited the discrepancies. See *Commonwealth* v. *Bailey*, *supra* at 396; *Commonwealth* v. *Lagacy*, *supra* at 630. The judge properly instructed the jury that the fresh complaint evidence could be used only to corroborate and not to fill any gap in the prosecution's case. In any event, the discrepancies consisted largely of peripheral details and did not prejudice the defendants.

4. *Other claims.* The other appellate contentions made by Lang do not require extended discussion.

a. Lang argues that the following portion of his trial counsel's closing argument constituted ineffective assistance:

> "The burden of proof is on the government, on the Commonwealth, of which you are a part, and the burden is on you, as it was on Mr. Lang to sit here and to hear all this evidence. And based on the government's case I ask you people of the Commonwealth to find Mr. Lang not guilty."

This statement was nothing more than an awkward rhetorical flourish. See *Commonwealth* v. *Proulx*, 23 Mass. App. Ct. 985, 987 (1987). It did not bring trial counsel's performance "measurably below that which might be expected of the ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

The alleged flaws in trial counsel's cross-examination and in his failure to make certain arguments and objections fall within the area of reasonable tactical decisions. The other claims of ineffective representation do not merit discussion.

b. The prosecutor's opening reference to a jigsaw puzzle was harmless. Her reference to Coleman in closing argument ("Mr. Coleman would have you give him the opportunity to say 'I saw no evil, and I heard no evil, and I didn't understand what was going on' ") was more an allusion to the defensive tack taken by Coleman's counsel in his closing argument than to Coleman's failure to take the stand. Also, this argument made no mention of Lang and drew no objection from either Lang's or Coleman's counsel. There was no error which created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Sanchez*, 405 Mass. 369, 375 (1989).

c. While the references to "rape" and "victim" by the prosecutor and the witnesses should have been avoided, they did not, in the circumstances, constitute error. *Commonwealth* v. *Foley*, 12 Mass. App. Ct. 983, 984 (1981).

*Judgments affirmed.*