TORRUELLA, Circuit Judge
(Dissenting).
No characterization of a rape should trivialize the emotional and physical injuries to which the victim of such conduct is subjected. Much to my regret, however, I am forced to dissent because the statute in question violates basic imperatives of our constitutional system: (1) that criminal laws define the conduct which they proscribe with sufficient specificity to give notice of the prohibited conduct to those who may be subjected to their application, and (2) that they also delineate clearly-marked boundaries to prevent the arbitrary enforcement of the statute in question. See Kolender v. Lawson, 461 U.S. 352, 357-58, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). The Massachusetts aggravated rape statute fails on both grounds.
The Massachusetts rape statute provides for a maximum sentence of twenty years. See Mass. Gen. Laws ch. 265, § 22(b). In contrast, the Massachusetts *524 aggravated rape statute incorporates several conditions, any of which, if met, exposes the offender to “imprisonment ... for life or for any term of years.”[6] Mass. Gen. Laws ch. 265, § 22(a). The petitioner in this habeas case was convicted of the latter offense and sentenced to life in prison.
Because the statute containing the aggravating factor charged in this case — ie., that the rape offense “results in or is committed with acts resulting in serious bodily injury,” id. (emphasis added) — does not define the crucial term “serious bodily injury,” thus failing to provide notice of the proscribed conduct and a clear standard for the enforcement of this crime, I must conclude that the statute is impermissibly vague.
As an initial matter, I do not subscribe to the majority’s reasoning that the Massachusetts Appeals Court (“MAC”) was reasonable when it held that the term “serious bodily injury,” as found in the Massachusetts aggravated rape statute, is a concept that the average person can understand as a matter of experience and apply in a criminal case in a uniform manner. The very fact that the Massachusetts legislature considered it appropriate to consistently define this same term elsewhere (including six times in the same chapter), cuts against this argument. However, it is principally the failure of this statute to satisfy the second condition of the applicable analysis — ie., that the statute “is so standardless that it authorizes or encourages seriously discriminatory enforcement,” United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) — that requires me to dissent.
“It is a ‘fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.’ ” Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (quoting Davis v. Mich. Dep’t of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989)). Examining Massachusetts’s aggravated rape law as it has been applied to Butler with this canon in mind, it is plain to me that the statute does, in fact, “authorize” and “encourage” seriously discriminatory and standardless enforcement.
As I have stated, to be sure, any rape — • irrespective of the magnitude of the physical, psychological, or emotional injuries it may cause — is an outrageous and deplorable violation of self, warranting punishment. But the gulf that separates the severity of the injuries the victim suffered in the instant case from those that amount to “serious bodily injury” under other Massachusetts statutes is so wide as to emphasize the arbitrariness that the statute could — and, here, did — allow.
Let me not speak in abstractions. The victim here suffered a “linear abrasion on the [ ] neck (to which the defendant held the knife), [] diffuse tenderness to [her] left rib cage, and [a] 3mm tear at her vaginal introitus.... ” Commonwealth v. Butler, 809 N.E.2d 1100, 2004 WL 1301796, at *1 (Mass.App.Ct. June 11, *525 2004) (internal quotation marks omitted). Coupled with the unseen harm that accompanies a rape — which, although independently reprehensible in itself, is obviously not encompassed within the term “serious bodily injury” — these physical injuries are not trivial. However, the injuries suffered by the victim in this case are, by comparison, a far cry from injuries that the Massachusetts legislature has elsewhere defined as constituting “serious bodily injury.” For example, it defined that term in the same chapter of the Massachusetts General Laws as injury resulting in “permanent disfigurement, loss or impairment of a bodily function, limb or organ, or a substantial risk of death.”[7] See Mass. Gen. Laws ch. 265, § 13A(c).
A further example can be found in the Massachusetts kidnapping statute, which defines the term “serious bodily injury” as physical injury “result[ing] in a permanent disfigurement, protracted loss or impairment of a bodily function, limb or organ or substantial risk of death.” Mass. Gen. Laws ch. 265, § 26. It shares this definition with statutes criminalizing assault and battery of an elderly or disabled person, see Mass. Gen. Laws ch. 265, § 13K, and wanton or reckless behavior creating a risk of serious bodily injury or sexual abuse to a child, see § 13L. Also in the same chapter, the Massachusetts assault and battery statute differs only slightly insofar as it does not qualify the “loss or impairment of a bodily function” by providing that it be “protracted.” Mass. Gen. Laws ch. 265, § 13A(c); see also § 15A (criminalizing “assault and battery with a dangerous weapon”). Further afield, the statute governing the offense of “causing serious bodily injury to participants in physical exercise training programs” defines “serious bodily injury” as harm that “creates a substantial risk of death or which involves either total disability or the loss or substantial impairment of some bodily function for a substantial period of time.” Mass. Gen. Laws ch. 265, § 40.
Outside of chapter 265, the phrase “serious bodily injury” is defined expressly and repeatedly in different ways throughout the general laws of Massachusetts.[8] This *526 fact alone belies the panel majority’s conclusion that the Massachusetts aggravated rape statute “provides a person of ordinary intelligence fair notice” of what it prohibits or offers standards that prevent rather the statute from “authoriz[ing] or encouraging] seriously discriminatory enforcement.” Williams, 553 U.S. at 304, 128 S.Ct. 1830.
A survey of Massachusetts cases does little to calm my concern regarding the lack of guidelines to cabin the aggravated rape statute’s scope, and underscores at least three issues that the panel majority overlooks. First, as the above suggests, aggravated rape convictions commonly involve injuries of greater severity than those at issue in the instant case. See, e.g., Commonwealth v. Robinson, 937 N.E.2d 522, 2010 WL 4676202, at *2 (Mass.App.Ct. Nov. 19, 2010) (unpublished table decision) (victim strangled, punched in mouth, and briefly lost consciousness); Commonwealth v. Dargon, 906 N.E.2d 1031, 2009 WL 1492264, at *1 (Mass.App. Ct. May 29, 2009) (unpublished table decision) (victim suffered bruises to head, face, and body; swollen right eye and bruised left eye; and four welts to back of head); Commonwealth v. McCourt, 438 Mass. 486, 781 N.E.2d 808, 812 (2003) (victim suffered extensive harm including two-inch laceration on chin, bruising throughout chest and back, abrasions on knee and calf, and possible tear in vaginal wall). Second, as this case demonstrates, the aggravated rape statute has the problematic ability to shrink as necessary, at times bringing much less severe physical injury into its purview. See, e.g., Commonwealth v. Sumner, 18 Mass.App.Ct. 349, 465 N.E.2d 1213, 1215 (1984) (upholding aggravated rape sentence where victim suffered bruises, scrapes, and seen in an “emotionally disturbed condition” after incident). Third, because a number of factors, any of which, if met, support a conviction under the aggravated rape statute, it is possible for prosecutors in Massachusetts to obtain convictions in the alternative — e.g., by claiming aggravated rape due to “serious bodily injury” or because the defendant knowingly carried or possessed an unlawful firearm during the commission or attempted commission of the rape offense. See Mass. Gen. Laws ch. 265, § 22(a); ch. 269, § 10(a).
This last point is crucial. In holding that the MAC was reasonable when it rejected Butler’s void for vagueness argument, the panel majority makes much of the fact that the state court “referr[ed] to a decision from the state’s highest court and two state appeals court decisions in which aggravated rape convictions were upheld.”[9] Maj. Op. at 521. But two of these cases involved circumstances in which the reviewing state courts had no reason to shed light on the meaning of “serious bodily injury” because appellants’ convictions could have also been supported by evidence that the rape offense was committed as part of a joint enterprise, anoth *527 er aggravating factor under the aggravated rape statute. See Commonwealth v. Coleman, 30 Mass.App.Ct. 229, 567 N.E.2d 956, 959-60 (1991); Commonwealth v. Pontes, 402 Mass. 311, 522 N.E.2d 931, 936 n. 7 (1988). The third case upon which the MAC relied, Commonwealth v. Sumner, 18 Mass.App.Ct. 349, 465 N.E.2d 1213 (1984), not only contained another aggravating factor (kidnapping), but also involved a set of physical injuries that, as here, seem to fall short of the level of injury that other statutes calling for “serious bodily injury” require. See 465 N.E.2d at 1215.
It is clear that, by failing to define the term “serious bodily injury” the Massachusetts aggravated rape statute fails to afford guidance or limiting principles that would contain its enforcement. This standardless dictate “impermissibly delegates basic policy matters to ... judges [ ] and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.” Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). This case is the result of this impermissible standardless delegation.
Regretfully, I am forced to dissent.

. The statute expressly references two aggravating factors — (1) commission of rape with acts that constitute or result in serious bodily injury and (2) commission of rape by a joint enterprise. The statute incorporates additional aggravating factors by reference to offenses defined in other chapters of the general laws of Massachusetts and elevates rape to aggravated rape if committed during the commission of those offenses. These aggravating offenses include: assault and battery with a dangerous weapon, assault with a dangerous weapon, robbery (armed or unarmed), kidnapping, burglary (armed or unarmed), breaking and entering at night, and carrying dangerous weapons.

. Contrary to the majority’s erroneous characterization of my views as being that "the federal constitution requires a state, before it may impose an enhanced sentence for aggravated rape, to adopt similar definitions of serious bodily injury across the state code...Maj. Op. at 522-23, I suggest no such thing. Nor do I suggest that a state must adopt the above-quoted standard before it imposes an enhanced sentence for aggravated rape.
However, in searching for guidance in the absence of “minimal guidelines to govern law enforcement,” Kolender, 461 U.S. at 358, 103 S.Ct. 1855 (quoting Smith v. Goguen, 415 U.S. 566, 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)), I point to this language for the purpose of highlighting the gap between the injuries in this case and the least severe physical harm that could amount to "serious bodily injury,” as that term is defined elsewhere in six other offenses found in the same chapter of the state code, and elsewhere in the Massachusetts General Laws.
Therein lies the problem: these other statutes define the key phrase “serious bodily injury," thereby restricting their enforcement within finite bounds and preventing haphazard and arbitrary application of the law. In my view, the Massachusetts legislature could very well define "serious bodily injury” as that term is specifically used in the aggravated rape statute to describe injury that is less severe than these other standards, presumably allaying my concerns in the process. What it cannot do, however, is fail to provide the most minimal of guidelines for one particular statute’s enforcement and "permit ‘a standardless sweep [that] allows [] prosecutors [] and juries to pursue their personal predilections.’ " Kolender, 461 U.S. at 358, 103 S.Ct. 1855 (quoting Smith, 415 U.S. at 575, 94 S.Ct. 1242).

. See, e.g., Mass. Gen. Laws ch. 90, § 24L (defining phrase as "bodily injury which creates a substantial risk of death or which involves either total disability or the loss or *526 substantial impairment of some bodily function for a substantial period of time”); ch. 90B, § 8A (same); ch. 269, § 14 (defining phrase as "bodily injury which results in a permanent disfigurement, protracted loss or impairment of a bodily function, limb or organ, or substantial risk of death”).

. While the panel majority accurately observes that we are bound to look to state court interpretations of state statutes for guidance, the panel focuses too narrowly on what these cases do for the issue of actual notice, giving short shrift to the fact that we are equally bound to recognize that "the more important aspect of vagueness doctrine 'is not actual notice, but the ... requirement that a legislature establish minimal guidelines to govern law enforcement.’ ” Kolender, 461 U.S. at 358, 103 S.Ct. 1855 (quoting Smith, 415 U.S. at 574, 94 S.Ct. 1242).