COMMONWEALTH vs. CHRISTOPHER M. LAGACY.

Hampden.  January 26, 1987. — March 6, 1987.

Present: GREANEY, C.J., BROWN, & SMITH, JJ.

*Rape. Evidence,* Fresh complaint, Hearsay, Cross-examination. *Practice, Criminal,* Argument by prosecutor.

At the trial of indictments for rape and kidnapping, the judge acted within his discretion in admitting in evidence, under the fresh complaint doctrine, respective statements made by the victim to a friend and to a police officer about three and one-half weeks after the incident, where, in explanation of the victim's delay in making the statements, the judge was entitled to consider circumstances that the victim was young, apparently confused, and inferably still in fear of her assailant, and where the victim had testified that she had initially believed she would be unable to furnish reliable information to the police. [624-628]

No occasion for reversal of convictions of rape and kidnapping was presented by the defendant's contention that the contents of the victim's written statement, which had been admitted in evidence under the fresh complaint doctrine, included certain items of hearsay exceeding the bounds of permissible fresh complaint evidence, where the defendant had not raised this issue by a focused objection at trial and where the questioned items either were cumulative of other testimony admitted without objection, or were used tactically during defense counsel's cross-examination of the victim. [628-631]

Certain portions of the prosecutor's closing argument at a criminal trial created no substantial risk of a miscarriage of justice. [631-632]

INDICTMENTS found and returned in the Superior Court Department on October 12, 1984.

The cases were tried before *William W. Simons,* J., and a motion for a new trial was heard by him.

*S. Thomas Martinelli* for the defendant.

*Ariane D. Vuono,* Assistant District Attorney, for the Commonwealth.

GREANEY, C.J. A Superior Court jury convicted the defendant of aggravated rape (two counts) and of kidnapping and

acquitted him on a charge of assault and battery by means of a dangerous weapon. The victim, twenty-one years old at the time of the incident, testified that she returned to her apartment building in Springfield about 11:30 P.M. on July 6, 1984, after attending a wedding. She was confronted by the defendant outside the building. At knifepoint, he forced her into a light yellow GMC pickup truck and drove her to a secluded area in nearby East Longmeadow. There, brandishing the knife, he ordered her to undress. He made her perform fellatio and then forced her to have intercourse with him. When these acts were completed, he drove her back to Springfield, suggesting on the way that they go to his home. She insisted that she be returned to her apartment building. Upon arriving there, the defendant followed the victim into the building's alcove, where she created a disturbance by ringing the door buzzers of other residents. This created enough of a distraction to allow her to slip inside the security door without the defendant's following her and to run upstairs to her fourth floor apartment.

We have considered each of the defendant's contentions on appeal[1] and, finding no reversible error, affirm his convictions and the order denying his motion for new trial.

1. The principal issues from our point of view are the defendant's claims pertaining to the "fresh complaint" evidence of two witnesses. The background of the fresh complaint testimony is as follows. The victim testified that, after she had escaped from the defendant, she locked the door to her apartment and secured the windows. After she calmed herself, she made a telephone call to a friend, Michael Boriello, and told him of the incident. Within fifteen minutes, Boriello came to her apartment and advised her to go to the police as soon as she felt better.[2] She did not make contact with the police, however, because, as she testified, "I didn't have the license

---

[1] These contentions are raised and argued by a lawyer who did not represent the defendant at the trial.

[2] The testimony by the victim that she had called Boriello right after the incident was not objected to. Boriello did not appear as a witness. There is an indication in the record that he was unavailable at the time of trial.

plate number [of the truck driven by the attacker] and [without that information] I didn't feel it would do any good."[3] The next day the victim moved out of her apartment to her parents' residence.

A few weeks later while driving towards East Longmeadow, she saw the truck and was able to copy its license plate number. That night she gave the number to a friend, George Suse, an auxiliary Springfield police officer, and asked him to ascertain the identity of the vehicle's owner. When he asked the purpose of the inquiry, the victim indicated that she was being harassed by the man who probably owned the truck. When Suse saw the victim the next day he told her he had obtained the requested information. According to Suse, the victim became "very emotional . . . [and] started trembling." Already suspicious, Suse "yelled at her [and then] she said [that she had been] raped the night of the wedding." She told Suse no further details. Suse immediately put her in touch with the Springfield police. On July 30, 1984, the victim gave a Springfield policewoman a written statement describing the incident and her discovery of the truck used by her attacker.

Suse's registration check had disclosed that the truck was registered to the defendant's brother, Craig Lagacy. The victim examined two separate photographic arrays. The first contained a picture of Craig Lagacy; she made no identification. The second array contained the defendant's photograph. When she came to his picture, she began sobbing as she identified him as the man who had kidnapped and sexually abused her.

(a) The initial fresh complaint testimony came from Suse, who described the victim's reaction when he gave her the identity of the truck's owner twenty-three days after the incident. The testimony was objected to by the defendant's trial counsel on the ground that the complaint was "not fresh anymore." The prosecutor argued that the delay could be found reasonable because the victim had been terrified and confused and because "she didn't know what to do [or] who to turn to."

---

[3] The victim also testified that the license plate was not attached to the vehicle but was left hanging in the rear window from a piece of wire.

The judge overruled the objection.[4] When the objection was argued, the prosecutor indicated that he would also offer through the policewoman the written statement given by the victim on July 30, 1984. Counsel also discussed when the judge should instruct the jury on the corroborative effect of fresh complaint testimony. The defendant's trial counsel indicated that he preferred that instruction be given when the policewoman testified. Subsequently, the policewoman was called and was allowed, without further objection by the defendant's trial counsel, to read to the jury the victim's written statement. Before the policewoman read the statement, the judge instructed the jury on the role of fresh complaint testimony.[5] The written statement itself was not admitted in evidence.

"An out of court statement of a victim of a sex crime is admissible as fresh complaint if made reasonably promptly in light of the circumstances." *Commonwealth* v. *Adams, ante* 534, 535 (1987), and cases cited. "There is no specified time period beyond which a complaint is no longer 'fresh.'" *Supra* at 535-536, citing *Commonwealth* v. *Bedard,* 6 Mass. App. Ct. 959 (1978). As was said in an early discussion of the doctrine: "Any considerable delay on the part of a prosecutrix to make complaint of the outrage constituting the crime of rape, is a circumstance of more or less weight, depending upon the other surrounding circumstances. There may be many reasons why a failure to make immediate or instant outcry should not discredit the witness. A want of suitable opportunity,

---

[4] The judge did not make an express preliminary finding that he found the complaint sufficiently prompt to be considered by the jury. See *Commonwealth* v. *McGrath,* 364 Mass. 243, 247 (1973). Such an express finding would have been preferable.

[5] The jury were instructed again on the corroborative effect of fresh complaint testimony later in the trial. No objection was made to the instructions on either occasion by the defendant's trial counsel, and the instructions have not been criticized by the defendant's appellate counsel. The instructions were generally satisfactory but could have been improved by an instruction that the jury were to consider the evidence only if they found the complaints to have been reasonably prompt in the circumstances. See *Commonwealth* v. *Sherry,* 386 Mass. 682, 691 (1982).

or fear, may some times excuse or justify a delay. There can be no iron rule on the subject. The law expects and requires that it should be prompt, but there is and can be no particular time specified." *Higgins* v. *People,* 58 N.Y. 377, 379 (1874). See *People* v. *O'Sullivan,* 104 N.Y. 481, 488-489 (1887). See also *Commonwealth* v. *Cleary,* 172 Mass. 175, 176-177 (1898) (Holmes, J., citing the *O'Sullivan* decision with approval). We recently upheld the admission of a complaint made by a nineteen year old victim of a homosexual attack "a month or so after the incident," holding that the trial judge acted within the limits of discretion in admitting the testimony under the fresh complaint doctrine. *Commonwealth* v. *Gonsalves, ante* 184, 185-187 (1986). "The only question open . . . is whether it can be said, as matter of law, that the complaint was made too late." *Commonwealth* v. *Cleary,* 172 Mass. at 177. "In extreme cases the evidence has been ruled out." *Id.,* referring to the *O'Sullivan* case, *supra,* as an example of such a case because the first complaint was made eleven months after the incident.[6]

Although the delay in this case is troubling, we do not think that admission of the evidence of the victim's complaint to Suse was unjustified. The victim was young and seemed confused.[7] From the fact that she immediately moved out of her apartment it could be inferred that she was in fear of the

---

[6] The fresh complaint doctrine has been applied frequently in cases of sexual abuse involving children. In these cases the doctrine has been considered flexible enough to allow consideration of complaints many months after the incidents leading to the charges. See, e.g., *Commonwealth* v. *Piccerillo,* 256 Mass. 487, 490-491 (1926); *Commonwealth* v. *King,* 387 Mass. 464, 473 (1982); *Commonwealth* v. *Wilson,* 12 Mass. App. Ct. 942, 942-943 (1981); *Commonwealth* v. *Brenner,* 18 Mass. App. Ct. 930, 931-932 (1984); *Commonwealth* v. *Adams, supra* at 536. The cases involving children would appear to constitute a factually distinct branch of the doctrine that gives special consideration to the natural fear, ignorance and susceptibility to intimidation that is often part of a child's make-up.

[7] In her written statement to the police, the victim stated that the incident had occurred on July 13, 1984. It was later pointed out to her by Suse that the incident must have occurred on July 6, 1984, a date fixed by his possession of a matchbook from the wedding they had attended together. The victim then changed the date to July 6 (having testified before the grand jury that the incident occurred on July 13).

defendant. He knew where she lived and was still at large. He had apparently stalked her and abducted her at knifepoint from the area of her apartment building. The abuse inflicted on the victim, as described by her testimony, was humiliating and degrading. The victim also testified, in substance, that her inability to obtain the license plate number of the truck on the night of the incident led her to believe that she could not furnish reliable information that would help to identify her attacker. As a consequence, she seems to have thought that reporting the incident to the police would have no useful result.

In deciding the objection, the judge could give this testimony weight. He could also take note of the fact that the victim had testified that promptly after the incident she had complained to a friend, Michael Boriello. The judge saw the victim. He was in a better position to decide the impact of fear on the victim's state of mind and to evaluate her thinking with respect to whether a report of the crimes could be dangerous or futile. In some aspects, the circumstances, beginning with the prompt complaint to Boriello and continuing thereafter, may have evinced a progression of events which warranted review by the judge of the entire combination of circumstances in deciding whether the victim's complaint was prompt enough to be considered by the jury. See *Commonwealth* v. *Izzo,* 359 Mass. 39, 42 (1971). We conclude that Suse's corroborative testimony, which was limited to a bare report of the fact of the crimes, cannot be ruled incompetent as matter of law. See *Commonwealth* v. *Lund,* 5 Mass. App. Ct. 884, 885 (1977). In reaching this conclusion, however, we should state that this case approaches the extreme. If the judge had excluded the complaint to Suse, he would also have been acting properly within his discretion. Trial judges should carefully scrutinize evidence of complaints that appear tardy. They should be mindful of the likelihood that the prejudice inherent in the admission of borderline fresh complaint evidence might outweigh its probative value, particularly since the average jury might have difficulty in understanding and applying fairly the usual limiting instruction.

(b) As had been indicated, Suse was followed to the stand by a Springfield policewoman who was permitted to read to the jury the written statement given to her by the victim on July 30, 1984. The defendant's trial counsel neither made nor renewed an objection to this testimony. Insofar as this statement was offered as fresh complaint and may have been challenged as not "fresh," its introduction was permissible, as an exercise of discretion by the judge, essentially for the reasons already discussed with respect to Suse's testimony.

The defendant's appellate counsel now also attacks the statement on the further ground that it put in evidence three items of hearsay. These are: (1) the victim's account of her telephone call to Boriello and their later discussion of what she should do; (2) the attacker's observation as they drove down the deserted road that took them to the crime scene that it was an area where "he had always gone four-wheeling"; and (3) the attacker's further comment that he intended to paint the tailgate of the truck black. The defendant's appellate counsel suggests that the remarks about "four-wheeling" may have led the prosecutor to call as a witness a used car dealer who testified that he (the dealer) had purchased the truck on September 10, 1984, and that the vehicle contained "Fun Country . . . all terrain" tires which were suitable for "four-wheeling," that is, "tak[ing] a vehicle off the highways onto mud roads or bogs or over rocks or whatever." Counsel also points out that the conversation about painting the tailgate was used to explain the fact that, when seen three weeks later by the victim, the truck's tailgate appeared to have been painted with black primer. Neither fact had been mentioned by the victim in her testimony, but both were referred to by the prosecutor in his closing to bolster his case on the issue of identification. The defendant's appellate counsel compares this case with *Commonwealth* v. *McDuffie,* 16 Mass. App. Ct. 1016, 1017-1018 (1983). In *McDuffie,* we reversed a rape conviction because of the admission of a rape incident report which contained noncumulative and excessive material, which went well beyond permissible fresh complaint evidence and which became the focal point of the prosecutor's summation. Prosecutors have also been cau-

tioned against using the latitude of the rule on fresh complaint testimony to put in evidence of a substantive nature that fills in gaps in their cases on material issues like the issue of identification in this case.[8] *Commonwealth* v. *Bailey*, 370 Mass. 388, 396 (1976).

There are at least three reasons why the principles of the *McDuffie* and *Bailey* cases do not help the defendant. First, we discern the lack of a good objection by the defendant's trial counsel to the parts of the statement now singled out for criticism. We reject the argument that the objection made by the defendant's trial counsel when the prosecutor offered Suse's fresh complaint testimony was adequate to cover the points now argued. That objection concerned itself solely with the issue of "freshness." See *Commonwealth* v. *McCreary*, 12 Mass. App. Ct. 690, 696 (1981). The defendant's trial counsel had seen the statement prior to trial and was aware that it contained the material which is now challenged by new counsel. The defendant's trial counsel did not specify a new objection to the material or even object to the policewoman's reading it into the record (as distinguished from using it to refresh recollection). Thus, the judge was given no opportunity to focus

---

[8] "Unlike other jurisdictions, the rule in Massachusetts allows not only evidence of complaint but a recital of all the details of the alleged wrong as contained therein." Liacos, Massachusetts Evidence 171 (5th ed. 1981), citing *Commonwealth* v. *Bailey,* 370 Mass. 388, 391-397 (1976). See *Glover* v. *Callahan,* 299 Mass. 55, 58 (1937) ("Where, as in this Commonwealth, evidence as to such complaints is admitted for the purpose of corroborating the testimony of the complainant, the whole of the statement made by her, including the details, is admissible"). If the written statement in this case is viewed strictly as fresh complaint evidence, it may be that the information about "four-wheeling" and painting the tailgate black constituted "details." Conversation between a victim and the attacker during the commission of the crime would constitute "details," and it would seem that conversation shortly before the incident might qualify as well. The victim's account of her conversation with Boriello is clearly beyond the scope of permissible "details." The scope of "details" has to be closely watched by trial judges, as the *McDuffie* case indicates, to ensure that the limited hearsay exception allowing fresh complaint testimony is not used to put inadmissible and prejudicial evidence into the case. See also *Commonwealth* v. *Bailey, supra* at 397 (cautioning trial judges to use their discretion to avoid the admission of fresh complaint which would "operate unjustly — as by inciting a jury through a needless rehearsal of the particulars of a gruesome crime").

directly on the challenged material, to hear argument on the
issue whether the material might go beyond acceptable limits
or could prejudice the defendant, and to decide, in light of the
arguments of counsel and after consideration of relevant au-
thorities, whether the statement should be redacted in some
way.[9]  ·

Second, as to the mention of contact with Boriello, it will
be recalled that the victim was permitted to testify without
objection to their conversation. The statement was therefore
largely cumulative. Moreover, the defendant's trial counsel
cross-examined the victim on her failure to follow Boriello's
advice to report the incident to the police. The statement added
one detail not in the victim's testimony — that Boriello had
volunteered to go along with her to the police. That new fact
might have suggested to the jury that the victim's testimony
should be viewed with skepticism because she had unreason-
ably rejected the assistance and moral support of a friend in
reporting the crimes. Such an inference was fortified by a
reference in closing argument by the defendant's trial counsel
to the prosecutor's failure to call Boriello as a witness, see
note 2, *supra.*

Third, and most important, the defendant's trial counsel also
used the statement with effectiveness to impeach the victim
during her cross-examination on the fact that she had reported
the incident as occurring on July 13, but had later changed the
date to July 6. This was a major point. In addition, he employed
the statement to point out discrepancies in her testimony con-
cerning the whereabouts of the knife during the trip to East
Longmeadow. Finally, in his closing statement the defendant's
trial counsel argued that the victim's testimony on the critical
issue of identification should be disbelieved because (among

---

[9] In reaching this conclusion, we are mindful that the matter of the fresh
complaint testimony and the objection by the defendant's trial counsel to
that testimony came up for consideration at the hearing on the defendant's
motion for new trial. There was a brief and confusing examination of the
defendant's trial counsel on the subject. The fact that the prosecutor agreed
at the hearing that the defendant's trial counsel had objected cannot, in this
case, change the record to insert an objection which we conclude is just
not there.

other reasons) the statement: (a) failed to identify the truck as two-tone in color;[10] (b) identified the black tailgate but failed to indicate that the truck also had black right and left front quarter panels and a black hood; (c) failed to make an identification of even one letter or numeral of the license plate despite the victim's having been with her attacker for a considerable length of time and having had the opportunity to see the plate; (d) mentioned the "four-wheeling" comment in a context that suggested foolishness on the part of the attacker in giving away identifying clues; and (e) contained the major one-week discrepancy, previously alluded to, as to the date of the incident. These considerations were used to support independent evidence presented by the defendant that at the time of the incident he was disabled and limping as the result of a severely sprained ankle (a fact, his counsel pointed out, that would have been obvious to anyone who saw him) and evidence of alibi. The suggestion is thus powerful that the statement was used tactically by the defendant's trial counsel. In such circumstances, when a statement is used by the defendant to discredit the victim during her cross-examination, it may be admissible on more traditional principles without regard to the limitations that govern fresh complaint testimony. See, e.g., *Commonwealth* v. *Coolbeth,* 4 Mass. App. Ct. 855, 855-856 (1976); *Commonwealth* v. *Simpson,* 6 Mass. App. Ct. 856, 856-857 (1978). Such is the case here.

2. The other contentions made by the defendant's appellate counsel do not require extended discussion.

(a) No substantial risk of a miscarriage of justice is created by either aspect of the prosecutor's closing argument to which the defendant's appellate counsel now takes exception. The portion which is claimed to be an indirect comment upon the defendant's failure to testify is merely a response from the Commonwealth's perspective to the arguments developed by the defendant's trial counsel in his closing argument. Contrast *Commonwealth* v. *O'Brien,* 377 Mass. 772, 778 (1979) (where

---

[10] The jury had in evidence photographs of the truck to compare with the victim's descriptions of it furnished by her testimony and by the statement.

the prosecutor made reference to an imaginary conversation between defense counsel and an expert witness). As such, the prosecutor's argument constituted proper commentary on the evidence. The argument concerning the defendant's brother's testimony, when taken in context, was comment on the credibility of the testimony.

(b) The contention that the trial judge was under a duty to have a colloquy with the defendant on his constitutional right to testify has been disposed of adversely to the defendant by our decision in *Commonwealth* v. *Hennessey, ante* 384, 386-390 (1987).

(c) The remaining issues raised by the motion for new trial are adequately dealt with in the trial judge's memorandum on the motion. The factual findings in that decision are supported by the evidence which the judge found credible, and his rulings of law were sound.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*