COMMONWEALTH *vs.* RICHARD FLEBOTTE.

No. 92-P-366.

Middlesex. May 5, 1993. - June 28, 1993.

Present: BROWN, KASS, & LAURENCE, JJ.

Further appellate review granted, 416 Mass. 1103 (1993).

*Rape. Practice, Criminal*, Examination of jurors. *Jury and Jurors. Evidence*, Fresh complaint, Cross-examination.

At the trial of a defendant charged with raping his two year old daughter, no error requiring reversal resulted from the judge's declining to inquire of prospective jurors whether any of them, as a child, had been the victim of abuse, or from the judge's declining to examine the prospective jurors individually. [677-678] BROWN, J., concurring.

Although three witnesses at the trial of indictments charging various sexual offenses gave fresh complaint testimony that went beyond corroborative detail in that their testimony described offenses as to which the child victim had not testified, any error in the admission of such testimony was harmless in view of the judge's instruction to the jury that fresh complaint testimony was admissible only insofar as it corroborated the primary complaint of the putative victim, considered together with the facts that the jury demonstrably were able to follow the judge's instructions, and that the judge allowed a motion for a required finding of not guilty on one charge, thus neutralizing certain testimony of the fresh complaint witnesses. [678-681] BROWN, J., concurring.

There was no merit to the contention by a defendant in a criminal case that he was denied his right to cross-examine the victim about certain photographs. [681]

INDICTMENT found and returned in the Superior Court Department on June 29, 1989.

The case was tried before *Robert A. Barton*, J.

*Robert L. Sheketoff* (*John A. Amabile* with him) for the defendant.

*Lincoln S. Jalelian*, Assistant District Attorney, for the Commonwealth.

KASS, J. Richard Flebotte was convicted by a jury of raping his daughter, Dora (not her real name), when she was something over two years old. There was evidence that he

had placed his penis in the child's mouth and ejaculated. The jury acquitted the defendant of a charge of assault with a dangerous weapon (it was alleged that he had burned the child with a cigarette) and convicted on an indictment for simple assault and battery. The charge of assault and battery was placed on file with the defendant's consent.[1] As to an indictment for indecent assault and battery, the judge allowed a motion for a required finding of not guilty.

1. *Examination of jury venire to determine that the jurors stood indifferent.* Except for a limited category of cases in which the defendant is a special target for racial prejudice or in which interracial sex or murder is involved, a judge is not bound to ask questions of prospective jurors beyond those required by G. L. c. 234, § 28, nor is the judge, except in those instances, required to conduct individual voir dire examinations of members of the venire. Compare *Commonwealth* v. *Lumley*, 367 Mass. 213, 216-217 (1975), and *Commonwealth* v. *Moffett*, 383 Mass. 201, 214 (1981), with *Commonwealth* v. *Sanders*, 383 Mass. 637, 640-641 (1981); *Commonwealth* v. *Young*, 401 Mass. 390, 395-400 (1987); *Commonwealth* v. *Stephens*, 15 Mass. App. Ct. 461, 465 (1983); *Commonwealth* v. *Bodden*, 24 Mass. App. Ct. 135, 138-140 (1987); *Commonwealth* v. *Ramos*, 31 Mass. App. Ct. 362, 363-366 (1991); and *Commonwealth* v. *Proulx, ante* 494, 497 (1993). See Smith, Criminal Practice & Procedure §§ 1708, 1717, 1718 (2d ed. 1983 & Supp. 1993). The trial judge in this case did not commit reversible error by declining to inquire of the venire during empanelment whether any member had been the victim of child abuse when he or she was a child, or by declining to conduct individual voir dire examinations.

As events played out, a question to the venire about whether any member had experience of sexual abuse might

---

[1]Barring extraordinary circumstances (none are claimed in this case), when an indictment is placed on file without a sentence, no appeal lies concerning the charge made in that particular indictment, *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975), unless a sentence is later imposed. *Ibid.*

have been helpful. After the jury had begun its deliberations
in the instant case, the foreman sent a note to the judge say-
ing: "One juror has just disclosed a personal experience of
being sexually abused as a child, to relate a 'personal experi-
ence' in explaining his common sense interpretation of some
of the testimony in this case. Other jurors feel he should be
excused." The foreman identified the juror who had referred
to his experience and, with the consent of the prosecutor, de-
fense counsel, and the defendant, that juror was excused.
Again with the consent of counsel and the defendant to the
procedure, the judge thereupon conducted individual voir
dire examinations of all the other jurors on the deliberating
panel to inquire whether each could put completely out of
mind what the discharged juror had said. All but one of the
deliberating jurors said that they could do so, and that they
could decide the case solely on the basis of what they had
heard in the courtroom and the law as the judge had given it
to them. One juror said he could not put what had been said
out of his mind and that juror was discharged. Again with
the consent of counsel and the defendant, the judge replaced
the two discharged jurors with alternate jurors. In so doing,
the judge acted in accordance with G. L. c. 234, § 26B, and
*Commonwealth* v. *Haywood*, 377 Mass. 755, 768 (1979).

2. *Whether fresh complaint evidence was within the scope
of the primary evidence given by the victim.* At the time of
trial, Dora was three months shy of age five. Her testimony
demonstrates the difficulties which lawyers encounter when
questioning very young children. See *Commonwealth* v.
*Kirouac,* 405 Mass. 557, 559-562 & n.4 (1989). Frequently,
Dora made no verbal reply to questions put by either the
prosecutor or defense counsel. In comparison to the witness
in *Kirouac,* however, Dora was loquacious and responsive.
Yet in all the many pages of examination, her testimony ulti-
mately describes only one act of sexual molestation: that her
daddy had put his "peanut" in her mouth and that white
stuff had come out.

Three witnesses gave fresh complaint testimony which
went beyond corroborative detail in that their testimony de-

scribed offenses that Dora had not mentioned. The first of those witnesses, a psychotherapist, desribed Dora as having said that sometimes her father made her touch his penis and that he touched his penis on her hands and "butt," as well as her mouth. A second witness described Dora as saying her father had inflicted "boo-boos" on her with a stick like a hot dog coming from his belly. The third witness had Dora saying her father had touched her with his penis on the "tush" and that "the stick was red and hot, and the stick came from Daddy's belly."

The posture of the defendant toward fresh complaint testimony at trial was equivocal. Defense counsel filed no pretrial motion in limine. The first occasion on which the defendant made an effort to limit what a witness might testify to about what Dora had said was when Dora's mother was on the stand. During her testimony, defense counsel asked for a limiting instruction. The judge thereupon delivered a clear and forceful instruction to the jury explaining the fresh complaint exception to the hearsay rule and informing the jury that they were to consider evidence about what Dora had said about sexual assaults upon her only for the purpose of corroboration. The jurors were told they were to disregard testimony about what Dora had said insofar as it did not corroborate what they remembered Dora having said when she testified. On the fourth day of trial the defense filed a motion in limine asking the judge "to prohibit the prosecutor and the prosecution witnesses from referring to any alleged complaint of sexual touching or rape that is beyond the scope of the testimony of the alleged victim." That motion was denied without prejudice and the judge continued to deal with the scope of fresh complaint by repeating to the jury his limiting instruction on every occasion when a witness began to give fresh complaint testimony.

In telling the jury that fresh complaint testimony was admissible only insofar as it corroborated the primary complaint of the putative victim, the judge acted in accord with cases which had touched on the question before the defendant's trial, such as *Commonwealth* v. *Bailey*, 370 Mass. 388,

394-396 (1976), and *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 629 n.8 (1987). The principle has been further explicated since the trial of this case in, among other decisions, *Commonwealth* v. *Licata*, 412 Mass. 654, 658-660 (1992), and *Commonwealth* v. *Tingley*, 32 Mass. App. Ct. 706, 710 (1992). The *Licata* opinion particularly revisited the question whether a fresh complaint witness may speak to details not mentioned in the primary testimony and decided that supplementary details contained in fresh complaint testimony were acceptable within the limits of corroborative purpose. So it was that the court said in the *Licata* opinion, at 660, that the trial judge has discretion to exclude needless repetition of details, particularly of an inflammatory sort.

For a witness to testify about "fresh complaints" which describe offenses not mentioned by the primary victim witness is beyond the scope of permissible fresh complaint testimony. See *Commonwealth* v. *Bailey*, 370 Mass. at 396; *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992); *Commonwealth* v. *Tingley*, 32 Mass. App. Ct. at 710. There was forewarning in this case that the three witnesses previously referred to might describe acts beyond the one Dora had testified to. Of course they could testify to apparent cigarette burns which they had seen on her body, but it was not proper for them to testify about what Dora had said about the fire stick from her Daddy's belly. Dora had not mentioned that. It was less than satisfactory to deal with what one might call the overflow fresh complaint testimony by telling the jury to disregard it if, so far as they remembered, it did not corroborate Dora's testimony. Instances will occur when that is the best a trial judge can do because overflow fresh complaint spills out unexpectedly, but when, as in this case, the punch is telegraphed, it is better to conduct a voir dire examination of the witness so that the judge may prune out extraneous matter before the jury hears it. Particularly in sexual assault cases, the extraneous evidence may have a gripping quality and asking the jury to disregard it may be tantamount to asking the jury to ignore that an elephant has walked through the jury box.

In this case the jury demonstrably were able to follow the judge's instructions. They returned a verdict of acquittal on assault with a dangerous instrument, the indictment covering the alleged burning with a cigarette. Testimony by the fresh complaint witnesses as to the other indecent assaults was neutralized by the judge's direction of a required finding of not guilty on the charge of indecent assault and battery. To the extent that admission of the overflow fresh complaint testimony was error, it was, therefore, harmless beyond a reasonable doubt.

3. *Limitation on cross-examination.* The defense makes an altogether unpersuasive claim of denial of right to cross-examine the child, Dora, about certain family photographs. It was apparent to the judge that authentication of the photographs was going to be a difficult matter with a witness not quite five years old. The judge told defense counsel if he authenticated the photographs through another witness, he would entertain further examination of the child about the pictures later. Defense counsel never followed up. There was no error.

*Judgment affirmed.*


BROWN, J. (concurring). The majority concedes that this was not a well-tried case. I agree, albeit reluctantly, that any error here was, in all the circumstances, harmless beyond a reasonable doubt.

I often have counseled that the judge and the prosecutor, as well as the defense counsel, are *equally* responsible for ensuring that defendants receive a fair trial. Of course, "a judge is not bound to ask questions of prospective jurors beyond those required by G. L. c. 234, § 28," *ante* at 677, but certain questions cry out for inclusion within the remaining broad range of discretion, when, as here, the charge is child sexual abuse, and the question requested during empanelment is whether any member has been the victim of child abuse when he or she was a child.

Likewise, all participants should be aware of the great potential danger inherent in use of fresh complaint testimony, particularly when the victims are young children. As already mentioned by the majority, defense counsel filed no pretrial motion in limine, even though "[t]here was forewarning" that three witnesses might describe acts beyond those testified to by the victim. Neither the judge nor the prosecutor reacted in a manner which would have blunted what the majority called a "telegraphed" punch.