COMMONWEALTH *vs.* RICHARD FLEBOTTE.

Middlesex. December 9, 1993. - March 21, 1994.

Present: WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Rape. Evidence*, Fresh complaint, Cross-examination. *Practice, Criminal*, Examination of jurors. *Jury and Jurors.*

At the trial of an indictment charging rape of a child, the judge erred in admitting fresh complaint testimony that was outside the scope of the complainant's testimony and that added to it substantively: where the defense theory that the complainant had been coached by her mother was supported by evidence, where witnesses for the Commonwealth also gave testimony favorable to the defendant, and where the improper fresh complaint testimony was highly inflammatory, the error was prejudicial and required a new trial. [350-353]

At the trial of an indictment charging rape of a child, the judge did not err in declining to inquire of the prospective jurors, either as a group or individually, whether any of them had been the victim of a childhood sexual offense. [353, 356]

The court stated that henceforth, in cases involving sexual offenses against minors, the judge must interrogate each prospective juror individually as to whether the juror has been a victim of a childhood sexual offense. [353-356]

A criminal defendant was not denied his constitutional right to confront and cross-examine a child witness by the judge's ruling that certain photographs must be authenticated before being presented to a four year old witness for questioning on cross-examination. [356]

INDICTMENT found and returned in the Superior Court Department on June 29, 1989.

The case was tried before *Robert A. Barton*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Robert L. Sheketoff* (*John A. Amabile* with him) for the defendant.

*Lincoln S. Jalelian,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant, Richard Flebotte, appeals from his conviction of rape of a child.[1] The conviction was affirmed by the Appeals Court, 34 Mass. App. Ct. 676, 681 (1993), and we granted the defendant's application for further appellate review. We reverse the defendant's conviction, and remand the case for a new trial. A brief summary of the facts follows.[2]

On June 29, 1989, a Middlesex County grand jury returned indictments against the defendant charging rape of a child,[3] assault and battery by means of a dangerous weapon, indecent assault and battery, and simple assault and battery. In its bill of particulars, the Commonwealth asserted that the rape and indecent assault and battery occurred on "divers dates between September 24, 1987 and June 16, 1988," when the defendant raped the then two year old child orally and vaginally, and touched her vagina with his fingers. The Commonwealth asserted that the simple assault and battery occurred during the same period when the defendant "twisted, pinched, and/or pulled [Dora's] ears," and the assault and battery by means of a dangerous weapon occurred on June 16, 1988, when the defendant burned Dora with a lit cigarette on her nose, stomach, and leg.

Trial commenced on March 28, 1990. At the close of the Commonwealth's case, the trial judge allowed the defendant's motion for a required finding of not guilty as to the charge of indecent assault and battery. On April 5, 1990, the jury returned verdicts of guilty of rape and simple assault and battery, and not guilty of assault and battery by means of a dangerous weapon. The defendant filed a timely appeal, alleging prejudicial error in the judge's failure to ask the jury

---

[1] The defendant was also convicted of assault and battery. This conviction was placed on file with the defendant's consent and is not now at issue. See *Commonwealth* v. *Flebotte,* 34 Mass. App. Ct. 676, 677 & n.1 (1993).

[2] For additional factual background, see *id.* at 676-677.

[3] The child, whom we shall call Dora, is the defendant's daughter.

venire certain questions requested by the defendant, his allowing certain fresh complaint testimony, and his precluding certain cross-examination of Dora. We examine each issue.

1. *Fresh complaint evidence.* The defendant argues that the judge erroneously allowed fresh complaint testimony which exceeded the scope of the child's testimony. He further argues that this error was prejudicial, and that the prejudice was not cured by the judge's limiting instructions. The Appeals Court concluded that the judge erred, but also concluded beyond a reasonable doubt that the error was not prejudicial. 34 Mass. App. Ct. at 681.

Dora was the first witness called by the Commonwealth to testify. She was four years old at the time of trial. Dora testified, in so many words, that the defendant had placed his penis in her mouth and ejaculated. When asked if the defendant had placed his penis anywhere else on her body, she answered no. She further testified that the defendant burned her nose, stomach, and knee by "put[ting] fire on [them]," apparently with a cigarette.

In support of Dora's testimony, the Commonwealth called to testify Ginny Catalfamo, a sexual abuse therapist who had counselled the child. Catalfamo testified that Dora had told her in November, 1988, that the defendant had placed his penis in her mouth. She further testified that, during a session in October, 1988, Dora told her that the defendant had touched his penis to her hands, mouth, and buttocks. During cross-examination of defense witness Donna Hughes, a social worker and case investigator for the Department of Social Services (department), she testified that Dora told her that the defendant had caused the sores on her body by touching her with a "stick," that he touched her vagina with his finger, and that he placed his penis "on her [vagina]." During cross-examination of defense witness Beth Frankel, an investigator with the department, she testified that Dora told her that the defendant had touched her vagina, and that he had caused the sores on her body by touching her with a "stick [that] was red and hot, and the stick came from [the defendant's] belly."

The defendant had filed no pretrial motions regarding fresh complaint testimony. He first addressed the issue during the testimony of Dora's mother by requesting a limiting instruction. The judge thereupon instructed the jury that they were to consider such testimony only for purposes of corroboration, and that they were to disregard testimony concerning events not first testified to by Dora. At the start of the third day of trial, the defendant filed a motion in limine to limit any fresh complaint testimony to the specific acts testified to by Dora. The motion was denied. The defendant thereafter objected either prior to or during the testimony of each fresh complaint witness on the same ground. The judge overruled each objection and allowed the testimony, but on each occasion instructed the jury that they were not to consider any testimony of acts not first testified to by the child. The defendant argues on appeal that the fresh complaint testimony was erroneously allowed.

We agree that it was error to allow fresh complaint testimony of acts that were not testified to by Dora. "Under the fresh complaint doctrine, an out-of-court complaint seasonably made by the victim after a sexual assault is admissible as part of the prosecution's case-in-chief." *Commonwealth* v. *Licata*, 412 Mass. 654, 657 (1992), and cases cited. Such evidence may be used only to corroborate the victim's testimony; it may not be used as substantive evidence of the crimes alleged. *Id.* A fresh complaint witness may testify to the details of acts discussed during a fresh complaint; the acts about which the witness testifies, however, must have been testified to by the complainant. *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992). In other words, fresh complaint testimony is limited in scope to the events raised during the testimony of the complainant; it is not limited, however, as to the details of those events.

In the present case, Dora testified that the defendant had raped her orally and burned her. Thus, the fresh complaint testimony that the defendant touched the child's vagina with his fingers, that he placed his penis on her buttocks and vagina, and that he forced her to touch his penis was outside of

the scope of the complainant's testimony, and added to it substantively. It was therefore improper, and, for the reasons we discuss below, we cannot say that the error was not prejudicial.

To start, the defendant's theory — that Dora had been coached by her mother — was not unsupported. Numerous defense witnesses testified to facts and events that support his theory. Donna Hughes, a department social worker and case investigator, testified that no report of oral penetration had been made until October, 1988; this testimony rebutted that of Dora's mother, who claimed that Dora first complained of rape by oral penetration in July, 1988, and that the allegation was reported to Hughes in July, 1988. Beth Frankel testified that Dora was given an anatomically correct male doll, and when asked whether it had a "stick" like the one she described as coming from the defendant's belly, she seemed to indicate that the doll's penis was not such a "stick." Cathy English, a physical therapist who worked at the early intervention program that Dora attended, testified that contemporaneous notes made by staff members indicated that Dora appeared physically and emotionally normal on June 17, 1988, the day after she allegedly had been physically and sexually abused by her father. In addition, the defendant's mother and former coworkers testified that the defendant and Dora seemed to have a good relationship, and that Dora always appeared comfortable when with the defendant.

Several witnesses appearing for the Commonwealth also gave testimony that was favorable to the defendant. Dora's pediatrician was equivocal, at best, as to whether the sores on Dora were burns caused by a cigarette. William Coakley, a police officer who interviewed Dora shortly after the abuse was alleged to have occurred, and June McNeil, a physical therapist and Dora's case manager, agreed that Dora, when questioned shortly after her last visit with the defendant, said nothing about having been burned, and gave no hint of an incident of oral penetration.

Furthermore, the improper fresh complaint testimony was highly inflammatory. The improper testimony that the de-

fendant touched Dora's vagina with his fingers, that he placed his penis on her buttocks and vagina, and that he forced her to touch his penis, could have been viewed by the jury as demonstrating a pattern of conduct that proved the defendant's guilt as to the crimes in issue. Indeed, the prosecutor relied on such a theory in her closing argument by asserting that the defendant is a "pervert," and by referring to a pattern of conduct occurring over a period of time.

Thus, there appears a demonstrable misuse of the erroneously admitted fresh complaint testimony. An error is nonprejudicial only " '[i]f . . . the conviction is sure that the error did not influence the jury, or had but very slight effect . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.' " *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983), quoting *Kotteakos* v. *United States*, 328 U.S. 750, 764-765 (1946). See *Commonwealth* v. *Perrot*, 407 Mass. 539, 548-549 (1990); *Commonwealth* v. *Gilday*, 382 Mass. 166, 178 (1980). We cannot say that the judge's error in admitting the improper testimony was not prejudicial.

2. *Examination of the venire.* The defendant asserts on appeal that the judge erred in denying his requests for questions for prospective jurors. The defendant had requested that the jury venire be questioned on whether any individual therein was a victim of a childhood sexual offense. We agree with the Appeals Court that the judge did not commit error in denying the defendant's request. 34 Mass. App. Ct. at 677-678.

We state today, however, that in cases tried hereafter involving sexual offenses against minors, on request, the judge must interrogate individually each prospective juror as to whether the juror has been a victim of a childhood sexual offense.

Prior to the start of the proceedings, the defendant filed with the judge a motion for certain questions to be pro-

pounded to each prospective juror. Several questions submitted concerned issues of bias with respect to crimes of sexual offenses against minors.[4] The judge denied the defendant's motion, and instead questioned the jury venire as a whole on their objectivity.[5] Five members of the venire came forward and were excused on further interrogation concerning their objectivity. The jury were thereafter selected, and the trial ensued. During jury deliberation, the foreman notified the judge that one juror mentioned that he had been a victim of a childhood sexual offense. That juror was excused. The judge thereafter conducted a voir dire examination of each remaining member of the jury. One juror was dismissed on the disclosure that his impartiality may have been affected by his learning that the first juror had been sexually abused.

---

[4]The questions at issue are as follows:

"This case involves allegations of sexual assault, including rape, by a father upon his 3 year old daughter. His daughter is physically handicapped.

"A. Is there anything about these allegations that will [a]ffect your ability to afford the defendant a fair trial?

"B. Have you or anyone you are close to been the victim of a sexual assault, including any such assault when you were a child?

"C. Have you or anyone you are close to been accused of a sexual assault, including any such assault upon a child?

"D. Have you or anyone you are close to ever been accused of any type of an assault upon a child, including, but not limited to, your own child?

"E. Have you or anyone you are close to been the victim of any type of assault, including any type of assault when you were a child?"

[5]The judge questioned the jury panel as follows:

"As you have heard, the Commonwealth alleges and the defendant denies that he was involved in sexual activity with his natural daughter, a child who has not yet reached the age of five. Further, that he assault and beat that child by means of a dangerous weapon, a cigarette. Further, the Commonwealth alleges — and the defendant denies all of these allegations — that he did commit an indecent assault and battery upon that child, who, as I mentioned to you, has not reached the age of five. And, further, that he assault and beat that child, who has not yet reached the age of five. The defendant denies all of these allegations. Is there anything about the nature of the crimes alleged that would make it difficult for any one of you to be fair and impartial in this case?"

The judge was satisfied that the remaining jurors were unaffected by the first juror's disclosure. The judge replaced the excused jurors with two alternate jurors.

General Laws c. 234, § 28 (1992 ed.), requires a trial judge to question prospective jurors individually when it appears that their impartiality may be affected by extraneous issues. *Commonwealth* v. *Grice*, 410 Mass. 586, 588 (1991). It is generally within the judge's discretion to determine when there exists a substantial risk that extraneous issues would influence the jury such that an individual voir dire of potential jurors is warranted. *Id.* We have, however, through our power of general superintendence, "placed some limitations on a judge's discretion," *id.*, primarily in the area of racial prejudice. See *Commonwealth* v. *Young*, 401 Mass. 390, 398 (1987) (on motion of the defendant, individual voir dire of potential jurors is required in cases of interracial murder); *Commonwealth* v. *Hobbs*, 385 Mass. 863, 873 (1982) (individual voir dire of potential jurors mandatory in cases involving interracial sexual offenses against children when requested); *Commonwealth* v. *Sanders*, 383 Mass. 637, 640-641 (1981) (individual interrogation of jurors, when requested, required in cases of interracial rape).

Today, we again invoke our power of general superintendence, and require trial judges on request in future cases to question each potential juror individually as to whether the juror had been a victim of a childhood sexual offense. "We reach this posture because our observation informs us that in such instances there is a ' "reasonable possibility" that . . . prejudice would influence the jury.' " *Commonwealth* v. *Young, supra,* quoting *Rosales-Lopez* v. *United States*, 451 U.S. 182, 192 (1981). This safeguard is in accord with the policy set forth in G. L. c. 234, § 28. As the present case well illustrates, adult victims of childhood sexual offenses may be reluctant to come forward from a venire and discuss such a private and highly emotional event with a judge; they may be embarrassed about it, they may feel it would not affect their objectivity, or they may just not want to discuss it. Individual voir dire of these individuals would further assist

the judge in uncovering signs of impaired objectivity. The judge, of course, has broad discretion in determining what questions to ask potential jurors on this sensitive issue.

Our new rule does not affect the present case. The judge questioned the prospective jurors in accordance with the law as it existed at the time of trial, and the defendant was not prejudiced, as the jurors whose objectivity was in question were excused and replaced with alternates in accordance with G. L. c. 234, § 26B (1992 ed.).

3. *Cross-examination of Dora.* The defendant alleges that he was denied his constitutional right to confrontation and a fair and full cross-examination of Dora. We disagree.

During the defendant's cross-examination of Dora, defense counsel sought to present certain photographs to the child and question her in an apparent attempt to impeach her testimony. The defendant intended ultimately to offer the photographs in evidence. The judge allowed them to be marked for identification, but ruled that the photographs must be authenticated before being presented to Dora. The judge would not allow the defendant to attempt to have Dora authenticate them. He ruled that the defendant could have any witness other than the child authenticate the photographs, and then call the child for further questioning after authentication. The defendant did not attempt to authenticate the photographs through other witnesses.

The defendant argues on appeal that the judge's ruling denied him the opportunity to confront and to cross-examine the child fully and fairly. We disagree. The defendant was not denied the opportunity to question the child on the photographs; the judge specifically told him that he could do so once they were authenticated by another witness. The judge determined that any attempt to have the child authenticate the photographs would be futile, or nearly so. There was no denial of the defendant's right to confront or to cross-examine the child fully and fairly. There was no error.

4. *Conclusion.* The judgment is reversed, the verdict set aside, and this case is remanded for a new trial.

*So ordered.*