COMMONWEALTH *vs.* KURT WHITING.

No. 01-P-306.

Plymouth. June 18, 2002. - August 29, 2003.

Present: PERRETTA, PORADA, & CYPHER, JJ.

*Indecent Assault and Battery. Practice, Criminal,* Voir dire, Examination of jurors. *Jury and Jurors. Evidence,* Prior misconduct, Relevancy and materiality.

The judge at the trial of indictments charging indecent assault and battery upon a child did not abuse his discretion in declining to ask prospective jurors whether any of their family members or close personal friends had been a victim of any type of sexual assault; even if the judge had been required under *Commonwealth* v. *Holloway,* 44 Mass. App. Ct. 469, 473-474 (1998), to put such questions to potential jurors on voir dire, the judge's decision not to do so did not affect the defendant's substantive rights and therefore would not have required reversal. [105-108]

The judge at the trial of indictments charging indecent assault and battery upon a child did not abuse his discretion in permitting the complainants on severed indictments to testify about the defendant's alleged sexual abuse of them, where the testimony was not so dissimilar in nature or remote in time as to render it inadmissible, and where the potential for prejudice did not outweigh the probative value of the testimony. [108-110]

INDICTMENTS found and returned in the Superior Court Department on November 20, 1998.

The cases were tried before *Patrick F. Brady,* J.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

*Jack M. Atwood* for the defendant.

PERRETTA, J. A grand jury returned eleven indictments against the defendant, each charging him with indecent assault and battery upon a child under the age of fourteen years. See G. L. c. 265, § 13B. Seven children were the complainants. Five of the eleven indictments were severed for trial. At the conclusion of the trial on the five indictments, the defendant was found

guilty on three. On appeal from those convictions, he argues that the trial judge committed reversible error by refusing to ask potential jurors on individual voir dire whether any family member or close personal friend was a victim of sexual abuse and by allowing the complainants on the severed indictments to testify about the defendant's alleged sexual abuse of them. We affirm the judgments.

1. *Empanelment of the jury.* Prior to selection of the jury in the present case, the defendant requested the judge to make individual inquiry of the potential jurors as to whether they *or* any member of their family *or* any close personal friend had been a victim of any type of sexual assault. In making this request he cited *Commonwealth* v. *Holloway*, 44 Mass. App. Ct. 469 (1998). The Commonwealth joined in the defendant's request.

Expressing trial management concerns, the judge refused to expand the voir dire beyond the requirement set out in *Commonwealth* v. *Flebotte*, 417 Mass. 348 (1994), a case involving the rape of a two year old child by her father in which the court invoked its power of general superintendence, see G. L. c. 211, § 3, and held that "in [future] cases . . . involving sexual offenses against minors, on request, the judge must interrogate individually each prospective juror as to whether *the juror* has been a victim of a childhood sexual offense" (emphasis added). *Commonwealth* v. *Flebotte*, 417 Mass. at 353.[1]

After explaining the nature of the case to the venire, the judge asked whether any of them had any "bias or prejudice for or against the defendant," whether any of them would have difficulty applying the concepts of burden of proof and presumption of innocence "in a case of this nature," and whether any of

---

[1]As explained by the court, the rule that potential jurors are to be asked about any acts of sexual abuse committed against them was based upon G. L. c. 234, § 28 (judge must "question prospective jurors individually when it appears that their impartiality may be affected by extraneous issues"), and its observation that "adult victims of childhood sexual offenses may be reluctant to come forward from a venire and discuss such a private and highly emotional event with a judge; they may be embarrassed about it, they may feel it would not affect their objectivity, or they may just not want to discuss it. Individual voir dire of these individuals would further assist the judge in uncovering signs of impaired objectivity." *Commonwealth* v. *Flebotte*, 417 Mass. at 355-356.

them knew of "*any reason whatsoever* why [they] could not be fair and impartial if . . . selected as a juror . . ." (emphasis supplied). He next conducted individual voir dire examination of each juror in accordance with *Flebotte*, that is, he asked whether the prospective juror had been the victim of a childhood sexual offense. During the voir dire process, four potential jurors volunteered that their impartiality would be affected by the fact that they had family members who had been sexually assaulted. All four were excused from serving on the jury.[2]

It is the defendant's argument that we expanded upon *Flebotte* in *Holloway*, so as to require that trial judges also ask prospective jurors about sexual abuse of family members or close personal friends. The argument does not survive a careful reading of *Holloway*, a case involving an interracial rape of a child under the age of sixteen years, where the defendant requested that prospective jurors be asked on voir dire, "Have you or any members of your family or a close personal friend been the victim of any type of sexual assault?" *Commonwealth v. Holloway*, 44 Mass. App. Ct. at 471. The judge denied this request and conducted individual voir dire on the sole question of racial prejudice.[3] We held that the judge's failure "to satisfy the unequivocal requirement of *Flebotte* to examine each juror individually on the issue of sexual assault" was clear error. *Id.* at 473.

Because *Flebotte* was based upon the Supreme Judicial Court's "superintendency powers to implement the policy set forth in G. L. c. 234, § 28, and not upon constitutional considerations," *Commonwealth v. Holloway*, 44 Mass. App. Ct. at 473, we went on to consider whether the "error affected the substantial rights of the defendant." *Ibid.* We concluded that

---

[2]After the first of these four jurors was excused because her granddaughter had been sexually abused, the defendant renewed his request that the prospective jurors be asked about any sexual abuse of family members or close personal friends. The judge again denied the defendant's request and empaneled a jury of fourteen.

[3]The question put to the *Holloway* jurors on voir dire was, "This case . . . involves a charge of an alleged statutory rape by a black defendant . . . against a white person . . . who allegedly, was less than 16-years-old when the offenses allegedly occurred. Do you have any feelings about black or white people that might affect your judgment in this case?" *Commonwealth v. Holloway*, 44 Mass. App. Ct. at 473 n.4.

in the circumstances presented (the prosecution was based on a theory of statutory rape, the judge's individual voir dire was limited to questions concerning racial bias, and the trial was "essentially a credibility contest between the minor complainant and the adult defendant"), the defendant had met his burden of showing that the judge's refusal to comply with *Flebotte* had "possibly weakened his case in some significant way." *Id.* at 474. In doing so, we contrasted *Commonwealth* v. *Washington*, 402 Mass. 769, 772-773 (1988) (failure to comply with *Commonwealth* v. *Sanders*, 383 Mass. 637, 640-641 [1981], required reversal of African-American defendant's conviction for robbery of two white females where he presented three alibi witnesses and other evidence to discredit victims' identifications of defendant), with *Commonwealth* v. *A Juvenile (No. 2)*, 396 Mass. 215, 225 (1985) (error in conducting voir dire about racial prejudice did not require reversal where evidence of guilt was overwhelming and defendant's exculpatory testimony was uncorroborated).

Even were we to conclude that *Holloway* did expand upon *Flebotte* so as to require judges also to ask prospective jurors about sexual abuse of family members or close personal friends, the applicable standard of review would require us to determine whether the judge's refusal to put such questions to potential jurors on voir dire affected the defendant's substantial rights. Applying this standard to the circumstances presented, we would not reverse the convictions. In the first instance, the judge did comply with *Flebotte*. More importantly, the guilty verdicts against the defendant were not based upon a credibility contest between the two victims and the defendant. Rather, the Commonwealth's case was strong, if not overwhelming. Seven children were properly allowed to testify (see part 2 of this opinion, *infra*) that they had been abused by the defendant in ways related in manner and not remote in time to the events here alleged.

Our conclusion that there is nothing in *Holloway* that expanded upon the mandate announced in *Flebotte* leads us to the question whether the judge abused his broad range of discretion in refusing to put the requested question to the prospective jurors. See *Commonwealth* v. *Flebotte*, 417 Mass. at 355-356.

Based upon the previously described circumstances of the case, we conclude that there was no abuse of discretion and that, even if there were, it would not require reversal of the defendant's convictions.

2. *Evidence of other bad acts.* John and Jim were the complainants on the indictments that resulted in the convictions before us,[4] and Michael, Steve, Timmy, and Matt were the complainants on the severed and remaining indictments.[5] Sometime after the defendant's arraignment on the eleven indictments, a judge other than the trial judge was presented with two motions, that is, the Commonwealth's motion for a consolidated trial on all the indictments and the defendant's motion to sever. The judge allowed the Commonwealth's motion to join for trial five indictments and severed the remaining six. See *Commonwealth* v. *Hoppin*, 387 Mass. 25, 32 (1982) ("As a general rule, joinder is a matter to be resolved by the judge in his discretion. *Commonwealth* v. *Gallison*, 383 Mass. 659, 671 [1981]. *Commonwealth* v. *Blow*, 362 Mass. 196, 200 [1972]. See Mass.R.Crim.P. 9[a], [c], [d], 378 Mass. 859 [1979]"). In exercising his discretion in ruling on the motions, the judge expressly stated that "[n]one of the present rulings, of course, affects the authority and discretion of the trial judge to rule upon any evidentiary questions as the trial unfolds."

Immediately prior to trial, the Commonwealth sought the judge's permission to call Michael, Steve, Timmy, and Matt to testify about the defendant's sexual abuse of them. The prosecutor argued that their testimony was admissible to show modus operandi and the absence of mistake. The defendant argued that the indictments involving these four boys had been severed and that their testimony would be unduly prejudicial.

After reviewing the police reports and the memoranda of counsel and noting that the motion judge had left the question of the admissibility of the boys' testimony on the various indictments to his discretion, the trial judge concluded that the

---

[4]A third minor, Bob, was the complainant on an indictment that was tried with those involving John and Jim. The jury acquitted the defendant on that indictment.

[5]In accordance with G. L. c. 265, § 24C, we give pseudonyms to the seven complainants on the eleven indictments.

complainants on all the indictments were close in age, from five to ten years, that the place of the abusive acts occurred mostly at the defendant's karate studio where he was an instructor, and that the nature of the abusive acts against the complainants was substantially similar in nature even if somewhat different in minor respects.[6] Based upon these conclusions, the trial judge ruled that Michael, Steve, Timmy, and Matt could testify on the indictments alleging sexual abuse against John and Jim. We see no abuse of discretion. See *Commonwealth* v. *Barrett*, 418 Mass. 788, 793-794 (1994).

Citing *Commonwealth* v. *Yetz*, 37 Mass. App. Ct. 970, 971 (1995), the defendant argues that the acts against one of the boys on the severed indictments was so dissimilar and remote in time to the acts against John and Jim as to be inadmissible and that the testimony of Michael, Steve, Timmy, and Matt was unduly prejudicial. Whether the defendant touched the genitals of one boy or whether the boys touched the defendant's is irrelevant. In either event, the acts are not so dissimilar in nature as to make testimony about them inadmissible. Moreover, even if each of the specific acts against one of the boys could be deemed in isolation as remote in time from the acts against John and Jim, the proffered testimony demonstrated "the ongoing nature of the defendant's behavior." *Commonwealth* v. *Hanlon*, 44 Mass. App. Ct. 810, 820 (1998). We agree with the trial judge's conclusion that the evidence was not so dissimilar or remote in time as to render it inadmissible.

We accept the defendant's assertion that the challenged evidence was detrimental to his defense. Such evidence is always prejudicial to a defendant. The real question before us is whether the otherwise admissible evidence concerning the alleged acts of other misconduct by the defendant was made inadmissible because its probative value was outweighed by its potential for prejudice. Looking to the trial judge's broad range of discretion and the fact that he gave limiting instructions to the jury during and after the challenged testimony as to how they could and could not consider that testimony, we conclude that there is no basis for affording the defendant relief from his

---

[6]For purposes of analysis, the trial judge treated the acts comprehended by the severed indictments as uncharged bad acts. We do the same.

convictions. See *Commonwealth* v. *Hanlon*, 44 Mass. App. Ct. at 820-821.

*Judgments affirmed.*