Following a jury trial in the Superior Court, the defendant was convicted of possession of a firearm without a license, in violation of G. L. c. 269, § 10(a ).[2] On appeal, he argues that the judge erred by admitting testimony that allegedly profiled him as a drug dealer and by instructing the jury to disregard certain comments made by defense counsel during her closing argument. We affirm.
Background. During the course of an investigation involving two shootings, Boston police officers forcibly entered an apartment located on the second floor of a multi-family building on Rosedale Street and secured the premises while they obtained a search warrant. The defendant was the only person in the apartment at that time. Although he was not arrested, the defendant was taken to the police station, where he was interviewed. In a recorded statement, he explained that the apartment belonged to a friend who had given him keys to the unit so that he could feed his friend's cats. The defendant acknowledged that he heard the police knocking on the door and claimed that he did not respond because his friend had instructed him not to open the door. The defendant was released, but was arrested a few days later after the police executed a search warrant on the apartment and found a duffel bag in a bedroom closet that contained a .25 caliber Colt firearm. The bag also contained toiletries, glassine bags, a scale, and a wallet in which the police found the defendant's identification and Social Security card. Personal papers bearing the defendant's name were found in a night stand in the same bedroom where the duffel bag was found.
In a second recorded interview, the defendant claimed that he was not staying at the apartment and had not left any of his belongings there. However, he subsequently acknowledged that he sometimes left clothing and other items in the apartment. Redacted versions of the defendant's two recorded statements were played for the jury. The firearm and one live cartridge also were admitted in evidence, but the duffel bag and its contents, including the wallet, could not be located at the time of the trial and, therefore, the Commonwealth introduced photographs of these items. Detective Jean-Pierre Ricard, who was in charge of photographing and preserving the items seized during the search, testified that these items had been lost.
Discussion. 1. Profile testimony. Detective Brian Larkin testified that the glassine bags (baggies) found in the duffel bag are commonly used to package marijuana. The defendant objected and moved to strike Larkin's testimony. The judge overruled the objection, stating that photographs of the baggies and the scale constitute "circumstantial evidence that [the defendant] is involved in drug dealing." Defense counsel argued that "he's not charged with that," and the judge replied, "[t]hat may be, but the Commonwealth can argue that." She instructed the prosecutor to lay a foundation "that [Larkin] knows that [b]aggies are used in that regard." Larkin then testified that, based on his knowledge of how street-level narcotics are packaged and sold, the baggies found in the duffel bag "are the types of bags that would be used by a drug dealer to package marijuana." Larkin further explained that scales are used to weigh drugs and that, in this case, "the scale in conjunction with those bags" suggests to him "[t]hat somebody's got a pretty decent operation going." Over objection, Larkin also was permitted to testify that drug dealers commonly carry firearms for protection because "[s]ometimes people commit home invasions to rip off drug dealers."
The defendant argues that Larkin's testimony should not have been admitted because it constituted prejudicial profile testimony.[3] See Commonwealth v. Day, 409 Mass. 719, 723 (1991). We need not decide whether Larkin's testimony amounts to inadmissible profile evidence because we agree with the defendant that the testimony was not relevant to any issue in the case and should not have been admitted. We affirm the conviction despite this error, however, because we conclude that it was not prejudicial. See Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994) (error is nonprejudicial only if, when all is said and done, "the conviction is sure that the error did not influence the jury, or had but very slight effect" [quotations omitted] ). Here, there was overwhelming evidence that the defendant constructively possessed the firearm found during the search.[4] See Commonwealth v. Bastaldo, 472 Mass. 16, 34 (2015) (error not prejudicial where evidence of defendant's guilt is overwhelming). In addition, the prosecutor did not refer to Larkin's improper testimony during his closing arguments. Contrast Commonwealth v. Horne, 476 Mass. 222, 230 (2017) (admission of improper profiling evidence prejudicial where evidence of guilt was not overwhelming and prosecutor argued it in closing).
2. The judge's comments on defense counsel's closing argument. The primary theory of the defense was that the police investigation was inadequate. To that end, defense counsel argued that the jury should infer that the officers were not credible in light of their "[s]loppy, sloppy police work" with respect to the duffel bag and the wallet. Defense counsel argued that the Commonwealth had not sustained its burden of proof where "[a]ll we got is a dog and pony show about a car that doesn't make a difference about this case,"[5] and urged the jury to infer that the Commonwealth had manipulated the evidence from the fact that the defendant's recorded statements to the police were redacted for trial. Certainly the loss of evidence provided a sound basis for defense counsel's argument that the police investigation was inadequate; however, defense counsel improperly expressed her personal belief and disparaged the Commonwealth's witnesses on a number of occasions.[6] As a result, the judge admonished counsel at side bar and then proceeded to instruct the jury to disregard counsel's references to "a dog and pony show" and the fact that the audio recordings of the defendant's interviews were redacted.[7]
The defendant argues that the judge's comments precluded the jury from considering his primary defense, namely, that the police had mishandled the investigation. We disagree. After the judge instructed the jury to disregard counsel's improper comments, defense counsel was permitted to finish her closing, wherein she argued that the police "were just dragging stuff or losing stuff, willy nilly," and that "[a]ll the Commonwealth has proven is that their officers cannot do their job." Thus, contrary to the defendant's assertion, defense counsel was not forced to abandon her argument that the police investigation was inadequate. Rather, she pursued this line of argument until she concluded her remarks. We discern no error in these circumstances.
Judgment affirmed.

The jury acquitted the defendant of unlawful possession of ammunition and unlawful possession of a loaded firearm. G. L. c. 269, §§ 10(h ) & 10(n ).

Despite the Commonwealth's argument to the contrary, we assume without deciding that the defendant's objection to Larkin's testimony was properly preserved.

See Commonwealth v. Dagraca-Teixeira, 471 Mass. 1002, 1003 (2015) (defendants' "presence in the apartment plus evidence of their personal documents found in ... direct proximity to the heroin, was more than sufficient to establish possession").

Defense counsel was referring to certain aspects of the case that are not relevant to the appeal.

Counsel argued that she didn't "believe ... for one second" that the police accidentally lost the duffel bag and the wallet, and that there was "[n]o freaking way" the jury should credit evidence of the defendant's interviews with the police because the Commonwealth only played portions of the recorded statements at trial.

The judge instructed the jury as follows:
"Another judge of this court has found that stop and that search to be perfectly legal and appropriate. So if you heard [defense counsel] refer to it as a dog and pony show, I am instructing you in the strictest-in the strongest terms possible to disregard that reference to a dog and pony show. Also, if you heard [defense counsel]'s reference to the fact that the video of the interviews was cut off, I remind members of the jury that because of our rules of evidence and other applicable laws, sometimes we can't play you the entire interview. So if you were to hear [defense counsel] say that there was some ulterior, inappropriate reason why it was cut off, please disregard that inference, as well. There were entirely appropriate reasons why you heard only edited portions of the interviews."