NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1009

COMMONWEALTH

vs.

CARLOS RIVERA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2017, a Superior Court jury convicted the defendant of two counts of rape of a child.  On the defendant's direct appeal, a panel of this court affirmed the convictions in an unpublished memorandum and order.  Commonwealth v. Rivera, 96 Mass. App. Ct. 1113 (2019).  In 2022, the defendant filed a motion for a new trial based on ineffective assistance of both trial counsel and initial appellate counsel.  The trial judge denied that motion following a nonevidentiary hearing.  We affirm.

1.  Jury selection.  The defendant's lead argument involves the jury selection process.  Prior to trial, the defendant filed a motion that, inter alia, requested individual voir dire of prospective jurors about whether they, or someone close to them, had been the victim of sexual assault.  In lieu of adopting that

requested procedure, the judge used a hybrid approach to address the issue.  The defendant argues that this violated the rule established by Commonwealth v. Flebotte, 417 Mass. 348, 355 (1994), requiring trial judges on request in future cases "to question each potential juror individually as to whether the juror had been a victim of a childhood sexual offense." According to the defendant, this amounted to structural error, and his first appellate counsel provided ineffective assistance by failing to raise the error in the direct appeal.

We begin by setting forth in some detail how the jury selection process unfolded.  On the first of day of jury selection, the judge had the following exchange with defense counsel.

> JUDGE:  "Well, you can -- on the panel voir dire you can ask whatever questions you want to ask.
>
> "I will -- just so you know, what I typically do in cases like this is I ask the general questions, then I would ask the rape of a child questions, and if you want, I will ask questions regarding the defendant being Hispanic."
>
> DEFENSE COUNSEL:  "I think the victim is Hispanic also."
>
> JUDGE:  "So you don't wish to have that?"
>
> DEFENSE COUNSEL:  "If you are prepared to ask, Your Honor, I would be happy to have it, yes."
>
> JUDGE:  "Okay.  Then I have two questions on that, two questions with respect to the -- you know, the whether or not they have been accused of or a victim of a similar crime, things of that nature.  On those four questions I ask them not to raise their hand, but if they would have raised their hand, to come up to sidebar.  And so we then

2

clear out the panel that way.  And then once we clear out the panel, then we go to the panel voir dire part of it."

DEFENSE COUNSEL:  "Your Honor, also I'm not quite sure how this was going to be done in the circumstances.  I had some sense what it was.  I had proposed individual voir dire questions to be asked sidebar of each juror individually by you.  Is that still --"

JUDGE:  "I normally wouldn't because that's an individual voir dire, which I don't do.  I just do a panel voir dire. You're free to ask whatever questions you want to ask, including to the panel."

DEFENSE COUNSEL:  "To the panel."

JUDGE:  "Or to individuals on the panel.  It's totally up to you how you wish to do that.  Is there any -- now, the sensitive questions I will ask of them but ask them not to raise their hands.  Is there a question that is unique of that group that you want me to ask that you don't think I'm already going to ask in my general questions?"

DEFENSE COUNSEL:  "The questions that I proposed, Your Honor, I don't know if you had a chance to look at them, might well be covered in the questions you're prepared to ask."

JUDGE:  "Let me just check.  Well, I'm going to ask the questions with respect to, you know, whether or not they or a family member has ever been accused of or been the victim of.  So I'm going to be asking those questions.  With respect to the questions about believability, whether they believe someone, I'll leave that to the attorneys on the panel voir dire part.

"Okay.  Now, I know there is some motions and I'd like to defer those until after we at least start the impanelment [sic].  Is there any particular pretrial motion that would affect the impanelment [sic] in any way?"

DEFENSE COUNSEL:  "No, your Honor."

Consistent with this discussion, the judge then asked the jury venire a series of questions about such things as whether the jurors had any special hardships and whether they worked for

3

law enforcement, and he called for prospective jurors to signal

an affirmative response to each question by a show of hands.

Many jurors raised their hands to the questions asked.

The judge then proceeded as follows:

"Now, ladies and gentlemen, I have four additional questions to ask you, but with respect to these four additional questions, if your answer is yes and you would have raised your hand, I don't want you to raise your hand but I do want you to come up to sidebar when your number is called.  So again, with respect to these four questions, if you would have raised your hand because your answer is yes, don't.  But when your number is called, please come up to sidebar.

"First question:  Would the fact that the defendant is Hispanic affect your ability to decide this case fairly and impartially?

"Second question:  Do you believe that Hispanics are more likely to commit crimes than individuals from other racial or ethnic backgrounds?

"Third question:  Have you or an immediate member of your family or close personal friend ever been the victim of a similar crime or accused of a similar crime, and that being a sexual assault?

"And my last question:  Are you or any member of your immediate family a member of or associated with any organization that provides services to individuals who have been victims of child abuse or sexual assault?

"Okay, ladies and gentlemen, that now completes all of my questions.  So as I explained when we started, those jurors that in fact raised their hands to any of my questions in the first set, as well as those jurors who have raised their hands to any one of my last four questions, I would like to see you at sidebar when your number is called, with the attorneys present, again, simply to find out why you raised your hand or would have raised your hand and whether or not you could be a fair and impartial juror.

4

"Now, we're going to do this in an organized fashion so I ask you to listen very carefully to the court officers. They're going to line you up according to your number so we can be as efficient as possible."

The judge then called individual prospective jurors to sidebar and followed up with them as to why they either raised their hands, or, with respect to the second set of questions, would have raised their hands. It is evident from the record that not every prospective juror came to sidebar during this phase of the process; rather, this process involved only those who were responding affirmatively to the questions posed by the judge.[1] Over the course of the two days of jury selection, twelve prospective jurors informed the judge at sidebar that they personally had been raped or otherwise sexually abused, with the record indicating that at least four were children at the time. All were excused by the judge.

The judge then allowed each side to question the remaining prospective jurors (that is, those who had not answered affirmatively to any of the questions posed by the judge, and those who were not excused even though they had). Before that process began, the judge once again told the jurors that if they

---

[1] It is not clear in the record before us whether any prospective jurors who did not raise their hands during the first set of questions, but knew they had an affirmative answer to one or more of the second set of questions, simply joined the line to come to sidebar or first informed a court officer that they should do so.

5

did not feel comfortable answering a question in open court, they should say so and the matter would be handled at sidebar.[2] After the attorneys asked their questions, they had the opportunity to challenge for cause and to make peremptory challenges. Along the way, the lawyers struck the two jurors who had stated that they or someone close to them had been accused of, or the victim of, a sexual assault.[3]

The defendant argues that by filing his pretrial motion requesting individual voir dire on the sexual abuse issue, he preserved the issue for appeal. The Commonwealth counters that -- in light of the process laid out above -- the defendant acquiesced to the hybrid approach that the judge indicated he intended to use. Cf. Commonwealth v. Sousa, 33 Mass. App. Ct. 433, 436 (1992) (failure to renew objection to jury instructions

---

[2] Specifically, the judge said:

"if you're asked a question that you don't wish to answer in open court, just let me know, and then we'll go over to sidebar to my right and we'll discuss it at sidebar. So if you are asked something that you don't wish to answer in open court, it doesn't happen often but occasionally it happens, let me know. We'll go over to sidebar and deal with it over there."

[3] As noted, the judge already had excused all prospective jurors who reported that they, or someone close to them, had been victims of sexual abuse. The judge did not excuse two jurors who reported that they knew someone who had been accused of sexual assault. However, the prosecutor struck one of these (who reported that a coworker's son had been "rail-roaded" on a rape charge), and defense counsel struck the other (whose father had been convicted of rape).

6

after judge gave supplemental instructions in response to initial objection constitutes acquiescence).  In our view, the Commonwealth has the stronger argument on this.  The judge, after noting that he "normally" did not do individual voir dire, laid out his intended process, which notably included probing the subject in a manner that went beyond the narrow mandate of Flebotte in three important respects.[4]  The judge also informed counsel that they were free to pose any questions they wanted during attorney-conducted voir dire (something not available in the era that Flebotte was decided).  Having been informed of the hybrid process the judge intended to provide, defense counsel voiced no objection.  Individual voir dire is required by Flebotte only if requested, and the trial judge cannot be faulted for concluding under these circumstances that counsel had acquiesced to the procedure he described.

Even if we were to assume that trial counsel preserved the issue for the first appeal, we would conclude that first appellate counsel was not ineffective for failing to raise the

---

[4] Flebotte, 417 Mass. at 355, mandates individual voir dire only with respect to whether individual prospective jurors themselves had been victims of child sexual abuse.  See Commonwealth v. Whiting, 59 Mass. App. Ct. 104, 105-107 (2003). By contrast, the judge here did not limit the inquiry to the prospective jurors themselves but included "immediate member[s] of your family or close personal friend[s]," did not limit it to sexual abuse of a child but expanded it to include "sexual assault" in general, and asked it to include those accused of, not just victimized by, a sexual assault.

issue in the direct appeal, because the defendant would not have succeeded on that issue for the reasons set forth below. See Commonwealth v. Comita, 441 Mass. 86, 90-91 (2004) (failure to raise issue that had minimal chance of success does not constitute ineffective assistance).

We have described the directive that judges, if requested, conduct individual voir dire on the Flebotte question as "unequivocal." Commonwealth v. Holloway, 44 Mass. App. Ct. 469, 473 (1998). Unless and until the Supreme Judicial Court modifies that edict, we and the trial courts are duty bound to follow it.[5]

Assuming arguendo that the judge should have conducted individual voir dire on whether the prospective jurors had been victims of child sexual abuse, and that issue had been raised in the first appeal, it hardly follows that the defendant would

_____

[5] Flebotte was decided three decades ago. Since then, there have been many developments, including the advent of attorney-conducted voir dire and the implementation of hybrid approaches to juror selection. In addition, some cases issued in the interim suggest a renewed appreciation for providing trial court judges discretion in conducting jury selection. See Commonwealth v. Shea, 460 Mass. 163, 168-169 (2011) (criticizing particular hybrid voir dire process used by trial judge, while finding no abuse of discretion). Finally, in light of the sex abuse scandal involving the Catholic Church and the so-called "me too" movement, it is possible that there has been a lessening of the social stigma attached to victims of sexual abuse. In a case where the issue is squarely raised, the Supreme Judicial Court might find it useful to clarify whether strict individual voir dire posing the Flebotte question is still mandatory if requested.

8

have prevailed on that issue.  The defendant is not correct that the failure to ask the Flebotte question through an individual voir dire constitutes structural error.  Holloway, 44 Mass. App. Ct. at 473 (because it is required only by exercise of Supreme Judicial Court's superintendence powers and not by Constitution, failure to conduct individual voir dire regarding child sexual abuse requires showing of prejudice).

Although the judge did not engage in a full individual voir dire, the defendant was not prejudiced because the judge followed a hybrid approach that functioned as a close facsimile. The central concern that animated the Supreme Judicial Court to require individual voir dire on the topic was the fear that prospective jurors might not want to reveal that they had been the victims of child sexual abuse if forced to answer that question in open court.  Flebotte, 417 Mass. at 355.  The hybrid approach here addressed that problem in a different way, namely, by inviting prospective jurors to come to sidebar for individual questioning.  Thus, the judge inquired of all prospective jurors whether they had been victims of child sexual abuse, without calling on them to identify themselves as such in open court.[6]

---

[6] As noted, the hybrid approach here did require some degree of self-identification.  Theoretically, an astute observer inside the courtroom could have determined that some prospective jurors had an affirmative answer to one of the questions asked during the second set, because they went to sidebar even without

The only appreciable difference between the hybrid approach and what Flebotte mandates would seem to be that under individual voir dire, each juror would be asked point blank whether he or she had been the victim of child sexual abuse (so that they would be required to lie in order to avoid admitting this), while under the hybrid approach they could avoid having to answer the question directly by not going up to sidebar.  The fact that so many prospective jurors came forward to sidebar to reveal that they, or someone close to them, had been victimized by sexual assault suggests that the distinction is theoretical at best.

Because a challenge to the judge's failure to conduct individual voir dire on the Flebotte question would not have prevailed, initial appellate counsel was not ineffective for not raising it.

2.  Expert on delayed disclosure.  The victim testified that the defendant began raping him when he was six years old. It was undisputed that the victim did not tell anyone that he

_____

having raised their hands to the questions asked during the first set.  However, putting aside that this assumes the observer had unusually keen observational skills, the observer still would not have known which of the four questions asked during the second set was implicated.  To the extent that the defendant contends that some jurors may have failed to self-report a history of sexual assault, we see no appreciably greater risk of that here than through the process described in Flebotte.

had been raped until years later. In addressing that delay, the victim testified that the defendant had threatened him and had said that if he told anyone, the defendant would stop supporting the family, and the victim and his family would end up poor and homeless. The first person that the victim told was his godmother. According to the victim, the godmother responded by telling him to stop lying and looking for attention.

Among the witnesses the Commonwealth called at trial was Dr. Margaret Miller, a psychologist who testified as an expert witness on delayed disclosure of sexual abuse by child victims. She testified in pertinent part to common reasons why children who have been sexually abused might delay disclosure, such as fear of negative consequences from the disclosure or the shame or guilt they may feel from being abused.

On appeal, the defendant argues that his trial counsel was constitutionally ineffective for failing to mount a challenge to the scientific reliability of Dr. Miller's testimony regarding delayed disclosure by child victims of sexual abuse, and that first appellate counsel was similarly ineffective for not raising the issue in the first appeal. We disagree. Dr. Miller's testimony fits easily within the type of testimony that long has been held proper by case law. See, e.g., Commonwealth v. Bougas, 59 Mass. App. Ct. 368, 375-376 (2003). The defendant is unable to point to anything in that testimony that

11

constituted "junk science" whose reliability could have been challenged pursuant to Commonwealth v. Lanigan, 413 Mass. 154 (1992), S.C., 419 Mass. 15 (1994). Neither trial counsel nor initial appellate counsel was ineffective for not raising the issue.[7]

                                   Order denying motion for a
                                      new trial affirmed.

                                   By the Court (Milkey, Henry &
                                      Desmond, JJ.[8]),

                                   Assistant Clerk

Entered:  May 22, 2024.

---

[7] The defendant additionally argues that Miller improperly vouched for the victim's credibility in her testimony, and that trial counsel's failure to object to it on that basis amounted to ineffective assistance. This is not a case where a Commonwealth witness testified as both an expert and as a fact witness who indicated to the jury that he or she believed the victim's allegations. Contrast Commonwealth v. Velazquez, 78 Mass. App. Ct. 660, 666-667 (2011). In fact, the jury were made aware that Miller had never examined or even met the victim. Nothing she testified to properly could be characterized as "vouching" for the victim's credibility.

[8] The panelists are listed in order of seniority.

12